## James Starkey & another *vs.* Nicholas De Graff & others.

### March 22, 1876.

**Contract to Build Railroad—Chief Engineer as Judge of Work—Contract must Control when Price is Named.**—In a contract between plaintiffs and defendants for the construction of a certain line of railroad, were stipulations con-

stituting the chief engineer of the railroad company an umpire to determine all questions growing out of the contract, and making him the sole judge of the quality and quantity of work done and materials furnished, etc. It appearing from the express terms of the contract that a certain price was. agreed to be paid for a certain kind of work, *held*, 1. That, as to that, the chief engineer had no authority to fix another or different measure of compensation.

**Same—Remedy where Engineer Refuses to Act.**—2. In case the engineer refuses to measure or estimate the work done under the contract, the party entitled to compensation therefor may prove the quantity by other competent evidence.

**Same—Extra Work.**—3. Such stipulations do not extend to extra work done outside the contract.

**Instruction Refused which Assumes a Fact in Issue to have been Proved.**—It is not error for the court to refuse a request which assumes, as uncontroverted, a fact fairly open to dispute before the jury, though correct in other respects.

The plaintiffs, sub-contractors under defendants, by a written contract, for doing the earth-work on a portion of the line of the St. Paul, Stillwater & Taylor's Falls Railroad, brought this action to recover (among other things) the value of building a box culvert, as work not included in the contract, and the increased cost of work done in frozen ground, as to which last item it is alleged that the necessity for doing frost-work was occasioned by wrongful conduct of defendants, and that the defendants promised to pay plaintiffs the increased cost thereof above the contract price, the contract price being 17 3-4 cents, and the actual cost $1.00, per cubic yard. At the trial in the court of common pleas of Ramsey county, before *Brill*, J., the plaintiffs had a verdict; a new trial was refused, and defendants appealed.

*Bigelow, Flandrau & Clark*, for appellants.

*Gilman, Clough & Lane*, for respondents.

CORNELL, J. Under the rulings and instructions of the court of common pleas, plaintiff's right of recovery was restricted to two items—one for frost excavation, under the first count, and the other for the construction of the box

culvert, specified under the second count of the complaint. Hence, the only questions that need be considered are those relating to these items.

Evidence was introduced tending to show a parol modification of the original written contract in respect to the price defendants were to pay for whatever excavation plaintiffs might do in frozen ground, as claimed in the complaint, sufficient to raise a question of fact for the jury, and to support their finding thereon in favor of the plaintiffs.

The original contract contained the following stipulations: "It is further agreed that the said chief engineer of the railroad company shall be the sole judge of the quality and quantity of work done, and of materials furnished, and of any question arising under this contract, and from his decision there shall be no appeal. * * * Each and every of said parties hereby waive any and all right of action, suit or suits, or other remedy, in law or otherwise, arising under this contract. * * * This agreement is hereby made subordinate to the provisions of the contract with the St. Paul, Stillwater & Taylor's Falls Railroad Company and the second party, (the defendants herein,) and the specifications therein contained shall govern the first party (the plaintiffs herein) to this contract." This last-named contract contained a stipulation between the parties thereto, providing "that, to prevent all disputes and misunderstandings between them in relation to any of the stipulations contained in this agreement, or their performance by either of said parties, the said chief engineer shall be, and hereby is, made an umpire to decide all matters arising or growing out of this contract between them." The said original contract also contained provisions for monthly and final estimates, by the said chief engineer or his assistants, of the amount of work done and materials furnished under the contract, upon which payments were to be made.

It is insisted by defendants that these provisions remained in full force as a part of the modified agreement, and that

the decision of the chief engineer was conclusive upon the plaintiffs, not only as to the quality and quantity of frost-work done under such agreement, but as to the price which was to be paid therefor. Conceding the proposition that the modified agreement retained those stipulations, their effect upon the agreement is the question for consideration.

Clauses of this character must be construed so as to harmonize with the general provisions of the contract in which they are found, and not so as to defeat any clearly expressed intention and agreement of the parties, as evidenced by the terms of the contract. In this case the parties to the contract have, in express terms, agreed upon a particular rule or measure of compensation to be allowed for a particular kind of work. It is not to be presumed that they intended to leave it to another person to fix a different measure of compensation in the absence of any express stipulation to that effect. There is none such in this case. The engineer is simply constituted the sole judge between them of the quantity and quality of the work done, and he is made the umpire to decide all questions arising out of the contract. In other words, he could determine whether the excavation was earth-work or frost-work, and the quantity of each. This being determined, the contract itself fixed the price which was to be paid for each : for the former, 17 3-4 cents per cubic yard ; for the latter, such additional sum as it might cost.

In the present case the engineer, so far as he assumed to make any estimate of the frost-work done by plaintiffs, fixed the quantity at 2,445 yards, and in his final estimate allowed them a compensation therefor at double the price fixed by the contract for common earth-work—not on the ground that that was its fair cost, (for he expressly admits that he thought it was worth $1.00 a yard to take it out, and there is no conflict in the testimony but that it did cost at least that much,) but because, as he avers, the plaintiffs claimed that rate. Clearly this estimate of the price thus

arrived at was not authorized by anything contained in the contract, and was not conclusive upon the plaintiffs. What the quantity of frost excavation allowed by the engineer actually cost the plaintiffs was a question of fact for the determination of the jury under the evidence, and the ruling of the court upon this matter was correct.

The testimony tended to show that a portion of the frost excavation actually done by plaintiffs under the new agreement was not measured by the engineer at all, and that he declined to allow anything therefor on the ground that the work might have been done before frost set in. As to such work the court allowed the plaintiffs to prove the quantity by evidence other than the engineer's estimates, and instructed the jury that they might allow therefor such quantity as they might find from the evidence. In this there was no error. It was not competent for the engineer to go behind the agreement of the parties and attempt to adjust their rights in respect to matters occurring prior to, and settled by, the agreement. That the parties had done for themselves, and, although under the agreement he was the chosen arbiter to determine the quantity of the kind of work done, yet his refusal to make any estimate or measurement of any portion of it did not preclude the plaintiffs from showing the same, and recovering therefor.

2. The box culvert was clearly not embraced within the kind of work contemplated by the written contract, and hence none of its stipulations or provisions have any application in determining the right of the plaintiffs to recover for its construction.

3. One of the defences to plaintiffs' claims, relied upon in the answer, is that the plaintiffs and defendants voluntarily agreed to submit the same to the arbitration and award of J. S. Sewall, " he then being chief engineer of said company," for his arbitrament and decision, as in his judgment as such chief engineer should be just and right, and agreed to abide his award therein; that said engineer

accepted such submissions, examined the claims, and made an award thereon, which defendants acted upon in their settlement with the company, and that the plaintiffs are therefore estopped from disputing the same. It is now claimed by defendants that the court erred in its refusal to charge their fifth request upon this subject, and in ignoring the question of such submission and award in its general charge to the jury.

The request, as asked, assumes as an established fact that the final estimates of the engineer were made and intended by him as an award, under the alleged submission, upon the matters claimed to be embraced therein, whereas this was a fact for the jury to determine from the evidence. Instead of any such assumption being warranted, the case seems to have been tried upon the theory that the final estimates of the engineer, as made by him, were conclusive upon the parties by reason of his authority derived from the contract under which the work was done, and not by reason of the alleged agreement of submission claimed to have been entered into after the completion of the work; and that whatever he did in the premises was done by virtue of such authority, and not under any powers conferred by the alleged agreement of submission. There is certainly nothing in the case showing any express agreement by the parties to make such submission, nor can it be inferred as an undisputed fact, from the statement of account presented by plaintiffs to defendants, especially in view of Starkey's testimony, that "the sole purpose of presenting such account was to obtain a settlement with defendants, and with no expectation or intention that it should go into Sewall's hands, and that he never knew that it was in his hands." Moreover, it is very apparent from Mr. Sewall's testimony, and the fact that his final estimate was directed to defendants and delivered to them, and not to plaintiffs, that he regarded himself as acting, not under any agreement of submission, but by virtue of his authority under the contract.

In view of these facts the court properly declined giving the request as asked.

That the court omitted any allusion to this matter in its general charge cannot be urged as error, in the absence of anything showing that its attention was called to such omission, coupled with a proper request to charge upon the subject.

The proviso in the original written contract—that the second party thereto (the defendants) should in no case be liable for the payment of any estimate or moneys to become due under the contract until the second party should have received their pay for the same from the railroad company—cannot be held as applying to the claims upon which plaintiffs have been allowed to recover in this case, because such claims had their origin in subsequent arrangements between the parties, not contemplated by the original contract, but wholly outside of it. Hence defendants' sixth point is untenable.

Order affirmed.