Filed June 10, 1896.

---

No. 990.

## Lingeman *v.* Shirk, Executor.

VENDOR AND PURCHASER.—*Contract.*—*Statute of Frauds.*—A contract partly written and partly verbal, is a parol contract, and, when such contract relates to the sale of real estate, it is unenforceable, by reason of the statute of frauds.

CONTRACT.—*Agreement to Convey Real Estate.*—*Construction Of.*— An agreement for a valuable consideration to convey 2,560 acres of land in Craighead county, or 3,840 acres in Ponisett county, the grantee to select from the lands owned by grantor in such counties, is valid and enforceable on the ground that there is a definite mode prescribed in the contract of ascertaining the lands to be conveyed.

SAME.—*Conveyance.*— *Real Estate.*— *Release.*— *Agency.*— One who agrees to convey land to another, under a contract providing that a third person shall fix the number of acres to be conveyed, is not released from liability for failure to convey because the amount has not been fixed, such third person being his agent for the purpose.

SAME.—*Construction Of.*—*Real Estate.*—A contract, reciting that one of the parties is to convey to the other a specified amount of land in a certain State, and pay $5,000 within ninety days, in consideration of which the latter is to deed the former a certain farm, subject to a $5,000 mortgage, and that the price paid for the farm is $27,000, and the price at which the other land is taken is $17,000, is a contract for the exchange of land with prices affixed to each, the difference to be paid in money or land.

PRACTICE.—*Answer.*—*Statute of Limitations.*—Error in overruling a plea setting up the statute of limitations, is not rendered harmless by the fact that a general denial by defendant is left standing.

From the Miami Circuit Court.

*Tarkington & Effinger, H. P. Loveland* and *R. J. Loveland*, for appellant.

*L. Walker, W. B. McClintic, A. C. Harris* and *J. Mitchell*, for appellee.

GAVIN, J.—The appellant's complaint is based upon the following written contract:

"In this contract, E. H. Shirk is to deed John Lingeman, or order, 2,560 acres of land in Craighead county, Arkansas, or 3,840 acres in Poinsett county, he to select, taking the land in a body as nearly as he can, or, if he prefers, he may have land in the island, Clayton county, and allow me the difference in value between that and the Craighead county. The land to be selected out of any I may have in either county, when he comes down. Should he select in the island, T. B. Mills is to decide the difference in value. I am within ninety days, to pay him $5,000.00. In consideration of the above, he, within three days, deeds and mails me the deed for 226 acres he owns joining the town of Brownsburg, Hendricks county, Indiana, deed to be warranty, subject to $5,000.00 in mortgage on said property. He is also to assign to me a judgment on foreclosure for about $285.00, and assign to me a note of $176.50, and both on Charles Botmer and wife.

"Money to be paid on delivering of possession of property. Should he want the money sooner, or part of it, I will pay it.

"E. H. SHIRK,
"JOHN LINGEMAN."

"PERU, INDIANA, December 4, 1874.

"The price the said Shirk pays the said Lingeman for his 226-acre farm is $27,000.00, and the price the

said Lingeman takes the Arkansas land at is $17,000.

"E. H. SHIRK,

"JOHN LINGEMAN."

The supplemental contract is in these words:

"In this contract, referring to a contract made December 4, 1874, in which E. H. Shirk was to deed John Lingeman 2,560 acres of land in Craighead county, or 3,840 acres in Poinsett county, or an equivalent in value in Clayton county, township 20, range 4 east, Clayton county, Arkansas. The amount to be decided he would be entitled to in Clayton county by T. B. Mills. Lingeman now elects to take 1,703 acres in Poinsett county, township 12, range 5 east, and the residue in township 20, range 4 east, Clayton county, Arkansas. The number of acres he is entitled to to be decided by T. B. Mills. Deed to be made subject to all taxes accruing since December, 1875. Selection to be made within three months. This arrangement has reference to that part of original contract, made December, 1874, which refers to the Arkansas lands only, and the note of Botmer and wife, which I release him as personal endorser; amount of note, $176.50.

"E. H. SHIRK,

"JOHN LINGEMAN."

"December 17, 1875.

The complaint avers, that appellant in all things complied with the contract, conveyed the Hendricks county land, by the decedent's direction, to Milton Shirk, son of decedent, who afterwards sold the land to strangers, receiving the consideration therefor; that Shirk paid the cash required, and conveyed the 1,703.29 acres in Poinsett county, which appellant selected; that appellant, on February 1, 1876, selected the remainder of his land from the west end of the island owned by decedent in Clayton county, and noti-

fied Mills and Shirk of such selection, and requested Mills to decide the number of acres to which he would be entitled upon the basis of the difference in value between the Craighead and Clayton county land; but that said Mills never did so decide, nor did Shirk ever convey to appellant any of the island land, although frequently requested to have the difference in value decided by Mills, and to convey to appellant the number of acres to which he was entitled; nor did he ever pay any money, or thing of value, for the balance of said lands. Appellant seeks to recover the contract price of the 2,136 acres of Arkansas land.

The second paragraph of complaint sets up the same state of facts substantially, save that it alleges that Mills was the agent of Shirk, having general management and control of his Arkansas lands, while the selection of the lands and the notification to Mills are shown to have been in writing, but no failure upon his part to make the selection is specially averred; but appellee asserts that from the failure to aver a decision the presumption is that none was made. We assume this position to be correct, in considering the complaint. It is asserted in this paragraph that by these contracts appellant sold the Hendricks county land to decedent for $27,000.00, with the option upon his part of paying $17,000.00 of the purchase-price in cash, or by the transfer of the Arkansas land.

The six years' statute of limitations was pleaded, and the demurrer to it for want of facts overruled. This constitutes the only error argued in this court.

This plea is only sustainable upon one of two theories. 1st, that the complaint is bad; second, that the contract set up by this complaint is a parol contract, and, therefore, the six years' statute applies.

The appellant's principal argument is devoted to

the proposition that the contract is an absolute sale of the Hendricks county land, for $27,000.00, with an option, or privilege, on the part of Shirk to pay either in money or Arkansas land.

Were we able to agree with this proposition, the way before us would be cleared of many difficulties. We are unable, however, to see how it is possible to give to the contract under consideration this construction. It was, as we view it, simply a contract for the exchange of lands, with certain prices affixed to each, the difference to be paid in money. We think it apparent that Shirk was entitled to fill his contract by the conveyance of Arkansas land, and Lingeman was entitled to demand the land. Whether or not the contract sufficiently describes the Arkansas land to make it enforceable, is the serious question with which we are confronted.

It is undoubtedly the law, as claimed by counsel for appellee, that a contract partly written and partly verbal, is a parol contract, and, therefore, when relating to the sale of land, unenforceable by reason of the statute of frauds. *Rainbolt* v. *East, Admr.,* 56 Ind. 538; *Board, etc.,* v. *Shipley,* 77 Ind. 553; *Caylor* v. *Roe,* 99 Ind. 1; *Weaver* v. *Shipley,* 127 Ind. 526.

It is also true, that a contract for the sale of lands should describe the lands with such certainty as will enable the land to be ascertained. *Pulse* v. *Miller,* 81 Ind. 190; *Weaver* v. *Shipley, supra.*

But it has been held that a "deed will not be declared void for uncertainty as long as it is possible, by any reasonable rules of construction, to ascertain from the description found therein what property it was intended to convey." *McDonald* v. *Payne,* 114 Ind. 359; *Calton* v. *Lewis,* 119 Ind. 181.

It is undeniable that an agreement to convey "3,500 acres of land in Craighead, Poinsett or Clay-

ton counties, in Arkansas," or in either of them, would be insufficient and the contract unenforceable. *Baldwin* v. *Kerlin*, 46 Ind. 426; *Miller* v. *Campbell*, 52 Ind. 125; *Tewksbury* v. *Howard*, 138 Ind. 103.

Counsel for appellee argue that such is the legal effect of this description, but we do not so regard it. The writing provides that Lingeman is to have 2,560 acres in Craighead county, Arkansas, or 3,840 in Poinsett county, he to select them from lands in those counties owned by Shirk. Such a contract, where the lands are to be thus selected by one party, is a valid and enforceable contract, upon the ground that although the lands are not specifically described, there is a definite mode of ascertaining them prescribed in the contract, and thus that which would otherwise be uncertain may be made certain. *Carpenter* v. *Lockhart*, 1 Ind. 434; *Cheney* v. *Cook*, 7 Wis. 357; *Washburn* v. *Fletcher*, 42 Wis. 152; *Roehl, Admr.*, v. *Haumesser*, 114 Ind. 311, on p. 315; *Colerick* v. *Hooper*, 3 Ind. 316; *Baldwin* v. *Kerlin*, *supra*.

Here, however, the contract goes one step further, and introduces an additional element of uncertainty, because it is provided that Lingeman may also select land in the Clayton county island, in which event he is to allow the difference in value between that and the Craighead county land, Mills to decide the difference in value.

Is the contract unenforceable because of the uncertainty introduced into it by this provision?

Counsel argue that the selection was as uncertain as the contract, because the land taken in Poinsett county was described simply as 1,703 acres. Since the contract was, as to this land, fully executed, it was thereby taken out of the operation of the statute, *Overstreet* v. *Rice*, 4 Bush (Ky.) 1, so that we are left to deal only with the Clayton county land. We find the

parties then in this position: Lingeman has conveyed his land to Shirk, as agreed on, Shirk has paid $10,000.00 boot-money and conveyed nearly one-half of the Arkansas land as agreed, but Lingeman still lacks a little over one-half. Is he then, as to this one-half, remediless under his contract? Had Mills determined the relative value of the lands in the two counties, then the number of acres would have been determined and the land to which Lingeman was entitled definitely ascertained. But this he has not done.

The rule was established as early as Justinian's day, that if A agrees to sell to B certain lands at a price to be fixed by C, and C fails to fix the price, the contract fails. Inst. Lib. 3 Lit. 23 par.

This precedent the English court followed in *Milnes* v. *Gery*, 14 Ves. Jun. 400.

The holdings were based upon the principle that the law could not make a contract for a man, but would simply enforce for him that which he had made.

The case of *Baker* v. *Glass*, Munf. (Va.) 212, is in exact harmony with *Milnes* v. *Gery*, supra.

There are also cases holding that where the parties thus agree to leave the price to be fixed by a third person or persons, the court will not interfere to compel specific performance by requiring them to select the appraisers. *Dunnell* v. *Ketcltas*, 16 Abb. Pr. 205; *Greason* v. *Keteltas*, 17 N. Y. 491.

While the rule established by *Milnes* v. *Gery*, supra, does not seem to have been overruled, when applied to facts precisely similar, its strictness has been relaxed with reference to many cases somewhat differing in their facts.

In *Gourlay* v. *Duke*, 19 Ves. 429, while reasserting the principle of *Milnes* v. *Gery*, supra, it was held that contract for a lease upon usual and proper terms, as shall be judged reasonable and proper by John Gale,

was enforceable, and the court appointed a master to fix the terms.

In *Smith* v. *Peters*, 20 L. R. 511, and *Morse* v. *Merest*, 6 Mad. 25, it was decided that one party could not interfere with and prevent the appraisement, and thus take advantage of his own wrong.

In *Earl Darnley* v. *London, etc., R. W. Co.*, 3 D. J. and S. 23, while relief was refused under the facts of that case, because the contract could not be construed as an agreement for necessary crossings, and was, therefore, not within the principle of *Gourlay* v. *Duke*, *supra*, and others, "which carried into effect the substance of the agreement, disregarding the forms which had been provided for effectuating them, and which the court could not give effect to," this latter rule is recognized as the law in proper cases.

*Dunnell* v. *Keteltas*, *supra*, decides, that in cases where there is a contract to convey, at a price to be fixed by appraisers, the court will not compel the appointment of the appraisers, nor undertake to ascertain the fact which they were to determine, so that such a contract without this action must fail, unless, under certain circumstances, there has, notwithstanding the defect, been an acquiescence under it, or such part performance that it would be inequitable not to enforce its execution. In such a case the court will ascertain what is the fair value. In fact, where any term of a contract, in all other respects complete, is left to the determination of others, and the same is not of the essence of it, the court will take upon itself to decide that matter, and will thereupon decree specific performance. *Vandoren* v. *Robinson*, 16 N. J. Eq. 256, declares that where the contract is to convey for a "fair price," the court will ascertain it.

In *Dinham* v. *Bradford*, L. R. 5 Ch. A. 518, Hatherly, L. C., refused to apply the principle of *Milnes* v. *Gery*,

*supra*, to a case where, as part of the terms of partnership, it was agreed that one should, upon certain contingencies, become the purchaser of the interest of the other, at a price to be fixed by valuers, to be chosen one by each party. The principal reason given therefor was that as the one party had already had the benefit of a large portion of the contract for which the agreement for valuers was a part, therein it differed largely from a mere contract of purchase and sale unexecuted upon both sides. *Vide*, also Fry on Specif. Perf. sections, 346, 347.

Whether, under these authorities, we would be authorized to determine that in this case, since the contract provides expressly that the difference in value between the lands should be allowed, and since the contract was in all other respects carried out, this valuation by Mills was not an essential part of the contract, we do not find it necessary to decide, because we regard the second paragraph of the complaint as good upon another line of reasoning.

Numerous cases decide that where one party to a contract providing for the fixing of value or price by appraisers, prevents the appraisal by refusing to act when he ought to act, then he cannot avail himself of the failure to have the determination in the mode agreed upon. *Orne* v. *Sullivan*, 3 How. (Miss.) 161; *Lowe* v. *Brown*, 22 O. St. 463; *Greason* v. *Keteltas*, *supra*; *Johnson* v. *Conger*, 14 Abb. Pr. 195; *Hug* v. *VanBurkleo*, 58 Mo. 202; *Coles* v. *Peck*, 96 Ind. 333; *Herman* v. *Babcock*, 103 Ind. 461.

So, too, there are many cases deciding that where contractors agree to do work, to be paid for when approved by an engineer or architect, or upon his certificate, although the money is not, by the letter of the contract, recoverable without this action, yet, when

he who was to pass upon the question refuses or fails to do so, the contractor may still maintain his action where the failure is not caused by his own default. *Starkey* v. *DeGraff*, 22 Minn. 431; *VanKeuren* v. *Miller*, 71 Hun. 68; *Anderson, Elec. Co.* v. *Cleburne, etc., Co.*, 27 S.W. Rep. 504; *Williams* v. *Chicago, etc., R. W. Co.*, 112 Mo. 463.

This last class of cases is founded upon the principle, that because the engineer or architect is in the employ of the builder, it is, therefore, his duty to see that the engineer or architect acts, and that if he does not act the dereliction is chargeable to the employer, and the contractor is thereby authorized to submit the fact to the court and recover upon proper proof.

The second paragraph expressly alleges, that Mills was the agent of Shirk. It was then, upon the principle established by these cases, Shirk's duty to see that he made the valuation. His (Mills') failure to do so was chargeable to Shirk, who could not take advantage of his agent's wrong to deprive Lingeman of his right to damages under the contract.

Just what may be the measure of damages, whether the actual value of the Arkansas land, or the proportional contract price, we do not decide, as that proposition has not been fully discussed by counsel, and is not necessary to the determination of this cause at this time. The complaint is sufficient to show a substantial breach of the written contract. The six years' statute of limitations will not, therefore, apply to it.

Counsel for appellee claim that there is no available error, if any, because the general denial was filed and was left standing when the demurrer was overruled to the special answer.

The case of *Kern* v. *Saul*, 14 Ind. App. 72, is decisive against this position.

Judgment reversed, with instructions to sustain

the demurrer to paragraph of answer, and with leave to amend the claim if desired.

Filed February 21, 1896; petition for rehearing overruled June 10, 1896.