## HAMILTON et al. v. STEKOLL PETROLEUM CO. et al.

No. 14518.

Court of Civil Appeals of Texas. Dallas.

June 6, 1952.

Rehearing Denied July 3, 1952.

Kilgore & Kilgore, Dallas, for appellants.

Shank, Dedman & Payne, and William S. Campbell, all of Dallas, for appellees.

YOUNG, Justice.

The appeal is from a "take nothing" judgment entered in favor of defendant Company upon its motion for summary judgment in an action begun by plaintiffs H. H. Hamilton and J. R. Rich to recover contractual liquidated damages for alleged breach of a written contract; which writing provided for a farm-out to Stekoll of a portion of the oil and gas leasehold acreage to be acquired by Hamilton and Rich under contract with named landowners in consideration of Stekoll's assumption of obligation to drill test wells on the acreage to be leased.

The order appealed from having a basis in Rule 166–A (Summary Judgment), we must of necessity resort to the petition of plaintiffs for an outline of their cause of action and pertinent recitals of the contract in suit taken from appellants' brief in an unchallenged résumé of fact allegations.

According to petitioners, M. A. and D. E. Richards, individually, and the Estate of T. J. Richards, deceased, owned three blocks of land of approximately 5,000 acres each in King and Cottle Counties, Texas. The heirs of T. J. Richards, as owners of his estate, did business as "T. J. Richards Sons," managed by said M. A. and D. E. Richards, two of the heirs. By letter agreement dated January 4, 1950, these brothers, individually and as managers of T. J. Richards Sons, agreed to lease the three blocks of 5,000 acres each to Hamilton and Rich in consideration of the latter's agreement to drill a test well upon the several blocks within expressed time limits. The agreement contemplated a placement of the executed leases in escrow in the First National Bank of Paducah, with instructions that the lease covering each block be delivered upon proof of the commencement of a well on that block within the time specified in the contract; and that forms of leases were contemporaneously prepared and signed (January 5) by the Richards heirs for delivery to the bank in escrow.

It was further alleged that on January 26, 1950 plaintiffs entered into a written contract with defendant Stekoll Petroleum Company which provided that defendant would purchase the leasehold on a specified 4,000 acres out of block 1, mentioned in the Richards agreement, for a consideration of $8,000 cash and the assumption by Stekoll of plaintiffs' obligation to drill a well on said block. The agreement provided for $35,000 as liquidated damages for breach of aforesaid agreement to drill the well required to perfect plaintiffs' title to the acreage in block 1. Similarly the contract provided that Stekoll would have an option to acquire 4,000 acres of its own selection out of the leasehold covering the 5,000-acre block No. 2, equitably checkerboarded in the same manner as block No. 1, for a like cash consideration and the assumption of plaintiffs' obligation to drill a well on block 2; it being provided that "the option as to this Second Block must be exercised or declined by Buyer (Stekoll) by the time the first well on the First Block has reached a depth of 5,500 feet or by the time it is completed as a commercial producer of oil or gas or both at a shallower depth." The paragraph containing this option adopted by reference all the contract provisions pertaining to the drilling of the first well on block 1, inclusive of provision for payment of liquidated damages on defendant's failure to drill the well on block 2 after exercising its option to acquire acreage within that block.

Continuing, petitioners allege that defendant made the cash payment necessary to secure the designated acreage in block

1 and commenced drilling operations on that block within the contract period; that further, within the time provision above quoted of the contract, Stekoll exercised its option in writing to acquire the specified acreage in block 2, but that defendant thereafter had failed and refused to drill the well on block 2, thereby becoming liable to plaintiffs for the amount of their liquidated damages. In an alternative count, plaintiffs sought recovery of actual damages of $50,000 on account of defendant's failure to drill the well on block 2.

The contract in suit is of four parts. In part one, Hamilton and Rich agreed to transfer to Stekoll Petroleum Company the Richards Leases in so far as they covered a designated 4,000 acres out of the 5,000-acre tract styled Block No. 1 in the original lease of January 5, 1950, executed by Richards Brothers and allegedly placed in escrow with First National Bank of Paducah; the immediate agreement providing for examination of title to the Richards lands by J. D. Bell, an attorney of Paducah, and furnishing of title opinion; that if the title be found satisfactory, Stekoll would pay sellers $8,000 for such assignment of lease upon the 4,000 acres, with reservation, however, to sellers of "one-sixteenth (1/16) of seven-eighths (7/8) of all minerals produced from the assigned acreage, to be delivered free of all cost and expense, other than gross production and pipe line taxes (which are currently deducted) until the net amounts received by Sellers therefrom shall aggregate the sum of Forty Thousand ($40,000.00) Dollars, whereupon such reservation shall cease and determine." With further reference to block No. 1, the contract went on to say: "In connection with the block of 4,000 acres above described Buyer agrees that if Sellers comply with the foregoing agreement with respect thereto, they will accept such assignment, authorize the Bank to pay the consideration above expressed to Sellers, and with due diligence will on or before March 4, 1950, cause to be begun operations for the drilling of a well in the southeast quarter of B. S. & F. Section 11, and thereafter with due diligence will cause such well to be drilled to a depth of 6,000 feet unless at a shallower depth such well is completed as a commercial producer of oil or gas or both, * * *."

The present controversy relates solely to Section 3 of the Hamilton-Stekoll contract which deals with the right of defendant Company to acquire a portion of the acreage covered by the Richards lease on block No. 2; this Section reading in part: "Sellers represent and warrant that they have five year commercial leases covering approximately 5,000 acres of land in Cottle County, Texas, belonging to the T. J. Richards Estate, said 5,000 acres being described as: (Giving metes and bounds description, here omitted in interest of brevity.) Leases covering said 5,000 acres are similarly held in escrow in the First National Bank, Paducah, Texas, subject to delivery upon the commencement of a well, all as fully appears from said escrow contract and leases, reference to which is made for all purposes. In the event the well on the first block hereinabove set out is begun and drilled by Buyer in accordance with the provisions of this contract, then Sellers hereby grant to Buyer as a part of the consideration for the first contract an option to acquire said leases on 4,000 of the 5,000-acre block No. 2 hereinabove referred to, said 4,000 acres to be selected by Buyer leaving Sellers 1,000 acres equitably checker-boarded in a fashion similar to the checker-boarding in the first block above identified, conditioned that Buyers will pay Two ($2.00) Dollars per acre in cash for the leases in the second block and will permit Sellers to reserve 1/16th of 7/8ths of the minerals until therefrom they have received the net sum of Forty Thousand ($40,000.00) Dollars, and conditioned further that Buyer will seasonably comply with the obligations contained in such escrow contract as to the 5,000-acre block and will drill said well to the same depth and under the same conditions as hereinabove set out with respect to the drilling of the well on the first block. The option as to this second block must be exercised or declined by Buyer at the time the first well on the first block has reached a depth of 5,500 feet or by the time it is completed as a commercial producer of oil

or gas or both at a shallower depth." (See Footnote 1.)

Reverting again to block No. 1, the record reflects that, pursuant to the contract of January 26, 1950, Stekoll commenced the drilling of a well on that block, completing same on April 12, to a depth of 6,004 feet. The result being a dry hole, it was plugged and abandoned; defendant in the meanwhile on March 27, having notified Hamilton and Rich of its acceptance of option to drill on block No. 2 as set forth in above quoted excerpt from paragraph 3 of their January 26 contract, requiring cash consideration of $8,000 and commencement of operations on said second block on or before May 12, 1950. Here we reach the controlling issues on trial of this cause to the merits; defendants claiming that their contract for drilling was satisfied by timely commencement of a water well on the lease; plaintiffs on the other hand insisting that defendants were required under the Richards escrow agreement to be "making hole" (actually drilling) by May 12. The issue thus formed should not be further noticed except that in self-protection, according to plaintiffs, they were compelled to move on location on block 2 and themselves commence and complete a test well on that acreage. By reason of this entry by plaintiffs, defendants in turn assert breach and repudiation of contract by plaintiff—all matters for adjudication on final trial.

Defendant's motion for summary judgment states that from "pleadings, depositions, admissions and affidavits," there exists in the cause no genuine issue of any material fact, thereby entitling it to judgment as a matter of law. Attached thereto was affidavit of Robert H. Dedman, one of its attorneys of record, to effect that, relative to the Richards lands covering block No. 2 of 5,000-odd acres, no leases thereof from the T. J. Richards Estate were in escrow in the First National Bank of Paducah "on the 26th day of January, 1950, or any subsequent time." The statement just quoted is negatived in affidavits of Hamilton and the Richards brothers in

recitals that while said leases were actually in custody of J. D. Bell (joint attorney for the parties thereto) on the date mentioned, Bell having brought them to Dallas for inspection by Stekoll's attorney, they were later returned to the Paducah Bank for escrow. The irregularity, if it be such, is of no significance; the Richards leases having been consistently treated by both plaintiffs and defendant as in existence and escrow for all practical purposes; at the same time constituting the unquestioned and underlying subject matter of the contract in suit. Other papers on file herein include depositions of H. H. Hamilton and Martin H. Stekoll; also the instruments hereinabove referred to, namely, the Richards-Hamilton agreement of January 4, oil and gas lease of same parties of January 5, 1950 covering 5,325 acres of land, to be exact, lying in Cottle County, designated as block No. 2, and dealt with in Section 3 of the Hamilton-Stekoll drilling contract of January 26, 1950.

These additional facts appear without dispute: (1) That on March 3, 1950 Hamilton, by written transfer or assignment, conveyed to defendant Stekoll oil, gas and mineral leases covering approximately 4,000 acres out of block No. 1 of 5,000 acres, Richards lands (pursuant to actual drilling operations on said block and $8,000 cash paid), excepting therefrom "one-sixteenth of seven-eighths (1/16th of 7/8ths) of all the minerals produced from the property herein assigned, which reserved minerals shall be delivered into the pipe lines to which said property may be connected from time to time, free of all cost and expense other than gross production and pipe line taxes (which are currently deducted) until the net amount received therefrom shall aggregate the sum of $40,000.00 * * *." (2) That, as appears from affidavits of D. E. and M. A. Richards, tract 9 of block No. 2 had been incorrectly described in the Richards escrow lease of January 5, 1950, and a corrected lease of date May 29, substituted therefor; also that a tract of 183 acres,

1. Part 4 of the contract gave defendant Stekoll a similar option to acquire acreage in block No. 3 of the Richards lands for a cash consideration and agreement of defendant to drill a test well thereon.

known as Survey 6, had been omitted from the initial lease and supplied by instrument dated June 2, 1950.

The contract in question required a conveyance by plaintiffs to defendant, with reservations, of specified oil and gas leases upon performance by the latter of certain conditions therein provided (mainly the drilling of test wells on the respective blocks of land); and although the court's "take nothing" judgment does not so state, its manifest basis is Art. 3995 (Statute of Frauds), reading as follows: "No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * * 4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year; * * *." In this connection and in various pleas invoking aforesaid statute, appellees assert a failure of the contract to meet statutory requirements. But whether or not the foregoing writings and memoranda (with particular reference to block 2) constitute vulnerable transactions, must be viewed, we think, in light of the following observations:

■ (1) Sole foundation of the Hamilton-Stekoll contract of January 26, 1950 was the prior Richards-Hamilton instruments of escrow; Stekoll assuming the drilling obligations of original lessee thereunder, and the contract in suit repeatedly referring to these pre-existing instruments "for all purposes." And in testing aforesaid contract for sufficiency under appellees' stated objections, the several writings may be construed together. "The note or memorandum required by the statute of frauds need not be contained in a single document, nor, when contained in two or more papers, need each paper be sufficient in contents and signature to satisfy the statute. Two or more writings properly connected may be considered together, matters missing or uncertain in one may be supplied or rendered certain by another, and their sufficiency will depend on wheth-

er, taken together, they meet the requirements of the statute * * *." 37 C.J.S., Frauds, Statute of, § 177, page 656; Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S.W. 533. "An express or implied reference in one document to another incorporates the latter into the former, so as to allow the two to be considered together in determining whether the statute has been complied with." McElroy v. Danciger, Tex.Civ.App., 241 S.W. 1098, syl. 6; Taylor v. Lester, Tex.Civ.App., 12 S.W.2d 1097, writ ref.; Kauffman v. Deignan, Tex.Civ.App., 227 S.W.2d 271.

(2) However general the Stekoll contract may appear to be in other respects, it cannot be said that the acreage designated as block 2 was wanting in a certainty of description. Said block was set off by metes and bounds, definitely traced and located, as Stekoll testified, on a map of the area; and while block 2 was described in the Richards lease merely by survey and abstract numbers, it had been exhibited to Stekoll's attorney before drafting of the later agreement under the record; and for purposes of this opinion, the instruments may be presumed to cover identical lands.

■ Appellee further argues that said agreement is violative of the statute for indefiniteness because of the provision that out of the 5,000-acre block No. 2, 4,000 acres of leases and leasehold estates are to be conveyed "equitably checker-boarded," but in no wise discloses the means to be used in arriving at such checker-boarding; and that such proviso in effect amounts to no more than an agreement to make an agreement in futuro and unenforceable. To this contention the record furnishes a twofold answer: First, the contract provides that in case defendant buyer elects to exercise its option to acquire 4,000 acres of leases on block No. 2 (by drilling a well), said 4,000 acres are to be "selected by buyer (Stekoll), leaving sellers 1,000 acres equitably checker-boarded in a fashion similar to the checkerboarding in the first block above identified * * *." An examination of the evidence relative to the lands embraced in block 1 and the acreage thereof to be transferred to defendant (consummated by written as-

signment of leases dated March 3, 1950), reveals a definite pattern of checker-boarding which the parties obviously intended to follow in their division of the second block. (See Footnote No. 2.) Evidence concerning aforesaid pattern of checker-boarding as established by the parties and shown to be available on final trial, would not, in our opinion, be violative of the statute.

Second, according to the contract and as appellants logically point out, "the ultimate selection of the land within the general pattern above outlined was a matter which was to be performed by the Defendant. If the Defendant desired to enforce specific performance of its contract for a transfer of said leases, it had only to make a proper selection under the pattern of checker-boarding established by the contract with reference to Block No. 1 and come into Court with a demand for a transfer of the leases upon the property so selected. * * * The law will not permit it to claim the benefit of the omission of an act which was within its sole province to perform and over which the Plaintiffs would have no control." The principle, applicable to the existing situation, is stated in Lingeman v. Shirk, 15 Ind.App. 432, 43 N.E. 33, 35, viz: "Such a contract, where the lands are to be thus *selected* by one party, is a valid and enforceable contract, upon the ground that, although the lands are not specifically described, there is a definite mode of ascertaining them described in the contract, and thus that which would otherwise be uncertain may be made certain." (Emphasis ours.) See also Peckham v. Lane, 81 Kan. 489, 106 P. 464, 25 L.R.A.,N.S., 967; 49 Am.Jur., p. 660.

■ We find no evidence of ambiguity in the contract reservation by sellers of a 1/16 of 7/8 of the minerals until therefrom they have received the net sum of $40,000; the word "net" being clearly re-ferable to an amount free from charges or deductions; Overshiner v. Palmer, Tex. Civ.App., 185 S.W. 387; Hope v. Shirley, Tex.Civ.App., 211 S.W. 246; other than the stipulated "gross production and pipe line taxes; the reservation in form having all the indicia of an "overriding royalty," —a term of common usage and definite meaning in the industry. 31–A Tex.Jur., sec. 477, p. 820. Nor was there any uncertainty of contract in matter of costs of drilling on block 2; defendant Stekoll admitting that such was his responsibility, and having already paid all costs incident to development of the first block.

■ Appellee further charges un-enforceability of contract in that same provides for conveyance of oil and gas leases, but fails to "set forth how, when or in what manner such leases were to be conveyed; who was to convey them; or the terms, conditions or character of rights thereof which were to be conveyed." As has already been seen, the sole foundation for the instant undertaking was the Richards agreement and leases in escrow which may be looked to for terms, conditions and extent of the estate to be conveyed; and the data contained in these basic instruments, identified and in existence, were sufficient for purposes of the statute. "The contract for assignment of an oil and gas lease, * * * should contain the terms of the contract, identify the lease and the property covered thereby, the term for which the lease is to run, the obligation of the assignee as to drilling, the time and amount of payments in lieu of drilling operations, and other essential elements." 31–A Tex.Jur., pp. 412–414. Furthermore, we are here dealing with a contract that has been in part performed; and the parties have themselves made certain the form, terms, and conditions of assignment by the instrument of March 3, 1950 conveying the acreage called for in block 1; defendant's rights and obligations involv-

2. The contract providing, for example, as regards an assignment of 4,000 acres out of the first block to buyers, " * * * All of Section 11 *Except* the northwest quarter; All of Section 14 *Except* the southwest quarter; All of Section 2

*Except* the southwest quarter; All of Section 26 *Except* the northwest quarter," (Emphasis ours), and so on, "leaving approximately 4,000 acres to be covered by the assigned leases."

ing block 2 obviously relating to an identical transaction save as to description of acreage. "The parties may, by their own conduct under the contract, render certain that which might otherwise be deemed uncertain." 49 Am.Jur., p. 659.

Aforesaid contract as a whole sufficiently complies with the statute; hence is not properly a matter for peremptory disposition under Rule 166-A, T.R.C.P. The cause is accordingly reversed and remanded to the trial court for further proceedings.

On Rehearing.

The following statement appearing in introductory part of opinion carries an unintended implication: "The paragraph containing this option adopted by reference all the contract provisions pertaining to the drilling of the first well on block 1, inclusive of provision for payment of liquidated damages on defendant's failure to drill the well on block 2 after exercising its option to acquire acreage within that block." We were there merely in course of outlining appellants' cause of action as reflected by their pleading. This is indicated by the context; and any inference that such was a proper construction of a phase of the contract not now before this Court was inadvertent and is withdrawn. Otherwise and on full consideration of all points, appellees' motion for rehearing is overruled.