**A. Z. SKEETERS, Appellant,**

v.

**Stanley Lee GRANGER et al., Appellees.**

No. 7041.

Court of Civil Appeals of Texas.
Texarkana.

May 13, 1958.

Rehearing Denied June 17, 1958.

Henry O. Gossett, Jr., Longview, Reeves & Reeves, Tyler, for appellant.

L. F. Burke, Giles Harris, Longview, for appellees.

DAVIS, Justice.

On or after April 1, 1950, and prior to May 5, 1950, A. Z. Skeeters approached Cora Granger, a widow, Stanley Lee Granger, Ova Eudale Granger, Elva Granger Thompson and husband, J. T. Thompson, for the purpose of buying an oil and gas lease upon an 87½-acre tract of land situated in the William Watson Headright Survey in Harrison County, Texas, in which the Grangers owned an undivided 76-acre mineral interest. Skeeters represented to the Grangers that he was without funds to pay a cash bonus for the lease, but informed them that he was assembling a block of leases in the immediate vicinity of the land of the Grangers for the purpose of drilling a test well and promised to pay to them a bonus of $50 per acre for their lease in the event oil or gas was discovered within the block of acreage which he was assembling, if they would convey the same to him. The lease was to be a part of the "block," and the $50 per acre bonus was to be paid out of ⅛ of ⅞ of production. The Grangers agreed to the proposition of Skeeters and executed to Skeeters an oil and gas lease containing the following provisions:

"Lessee Agrees to start operations for the drilling of a test well to test the Woodbine Sand or to 4500 feet, whichever is the lesser depth, to within 120 days from the date of this lease, otherwise this lease and all rights thereunder shall be null and void. The location of the *said test well shall be within lessee's block of acreage of which this lease is a part.*

\* \* \* \* \* \*

"As a part of the consideration hereof, Lessor reserves unto themselves in addition to the regular ⅛th royalty herein, an undivided ⅛th of the ⅞ths of all the oil, gas and other minerals, *either in the Block* or *in the event of production from this tract, from this particular tract,* produced under the terms of this lease *(including the Block)* until, and only until, a sum equal to $50.00 for each acre leased hereby (including the Block) has been paid, at which time the said overriding ⅛th of ⅞ths oil payment interest shall pass to Lessee herein without further action of either party hereto.

*"The above provisions shall govern notwithstanding any other provisions of this lease."* (Emphasis added.)

Skeeters acquired leases on an additional seven tracts of land in the immediate vicin-

ity of the property of the Grangers. These other seven different leases all contained similar provisions as above quoted. The total number of acres in the eight leases amounted to 1,868 acres. These eight leases formed the *block* anticipated by the contract sued upon.

Subsequent to the execution of the Granger lease, Cora Granger died. No administration is pending upon her estate and none is necessary. The other plaintiffs are the sole surviving heirs at law of the said Cora Granger.

In keeping with the terms of the leases, three wells were drilled within the *block of leases,* each of which produced gas or gas distillate in paying quantities; the first well being completed April 21, 1952. Three units were formed for the drilling of the three wells but the tract of land belonging to the Grangers was expressly left out of either of the units. After production was acquired within the block of leases, the Grangers demanded payment of their $50 per acre bonus out of ⅛ of the ⅞ of production. Prior to their demand, all the leases except that of the Grangers had been assigned by Skeeters to other parties. The assignees of Skeeters, recognizing the contractual obligation in the leases assigned to them, actually paid to the Grangers $123.97 as their pro rata share of the production from the *block* of leases. This payment was made March 7, 1953. After this payment, Skeeters and his assignees denied further liability under the lease. Suit was filed on June 22, 1955.

Trial was to the court, with a jury, and upon completion of the plaintiffs' case, Skeeters filed a motion for instructed verdict, which was overruled. After Skeeters had offered his evidence, both parties presented to the court motions for instructed verdict and the motion of the defendant, Skeeters, was overruled; that of the plaintiffs, the Grangers, was granted. Prior to the presentation of these motions, both plaintiffs and defendant had announced to the court that neither of them had any special issues they desired to have submitted to the jury. The court then instructed the jury to return a verdict in favor of the plaintiffs in the sum of $3,701.03, and entered judgment for plaintiffs for that amount with interest from January 20, 1954. From this judgment Skeeters has perfected his appeal.

Appellant, Skeeters, specially pleaded the statute of frauds, Article 3995, Vernon's Ann.Tex.Civ.St., as a defense to appellees', the Grangers', cause of action on the ground that the description of the "block" of leases referred to in the lease sued upon was insufficient. He brings forward three points of error, challenging the judgment of the trial court on this ground, and one point contending that the trial court erred in admitting extrinsic testimony to identify the "block" of leases involved.

A similar situation exists here to that of the case in Tiller v. Fields, Tex.Civ. App., 301 S.W.2d 185, 190, wr. ref., n. r. e. In that case a pooling provision of a lease was challenged. It provided for the pooling of part of the land involved in the lease in a unit with adjoining lands in *"the immediate vicinity"* of the land described in the lease. There is no description of the unit or units to be pooled. This Court ruled that the lessee was made the agent of the lessors, and the lessee was given the unqualified right and power to make a selection or determination of the units to be formed under the terms of the lease without the necessity of further agreement or approval of the lessors. In this case, the only material difference in the question involved is that we have a *"block"* of leases to be assembled. The lessee was made the unqualified agent of lessors, without any limitation, to acquire a *block* of leases. Therefore, the statute of frauds has no application and extrinsic evidence was admissible to prove that the agent (lessee) did that which the lease authorized. In the case of Tiller v. Fields, supra, the court, speaking through Justice Fanning, said:

"Appellants in their brief cite the case of Stekoll Petroleum Co. v. Hamilton, 152 Tex. 182, 255 S.W.2d 187. We think a careful analysis of this case will show that it is supportive of appellees' position rather than that of appellants' because it is clearly recognized in the Stekoll case that the statute of frauds is met where the contract, instrument or agreement, gives either party the unqualified right or power to make a selection or determination of the details without the necessity of further agreement or approval of the other party. Also in this connection see Taylor v. Lester, Tex.Civ.App., 12 S.W.2d 1097, wr. ref.; Gray v. Producers' Oil Co., Tex.Civ.App., 227 S.W. 240; Rountree v. Bridwell, Tex.Civ.App., 269 S.W.2d 824, wr. ref., n. r. e.; Lingeman v. Shirk, 15 Ind.App. 432, 43 N.E. 33; Peckham v. Lane, 81 Kan. 489, 106 P. 464, 25 L.R.A.,N.S., 967. The lease pooling provision in question in this case clearly gives the lessee the broad and unqualified power to select or determine the lands (in the immediate vicinity) to be placed in the unit—this broad power is subject to the other terms of the pooling provision that same be in units authorized by the Railroad Commission of Texas or other regulatory body, etc."

We can see no reason why the same principle of law should not be applicable to the leases involved here.

■ Appellant took the position in the trial court, and takes the position here, that appellees just do not have an enforceable contract; and, that none of the parol or extrinsic evidence was admissible for any purpose. Appellees pleaded and proved the collateral agreement prior to and at the time of the execution of the lease that appellant was to acquire a block of leases within the vicinity of appellees' land. The agreement was collateral to the agreement sued upon; it does not contradict the express or implied terms of the lease; and,

the agreement is one that would not ordinarily be expected to be embodied in the lease. Note that the lease contains the following provision: " * * * said test well shall be within lessee's *block of acreage* of which this lease is a part." (Emphasis added.) That insertion clearly discloses in writing that there was a collateral oral agreement to pool the lease sued upon with other land, and we cannot say, as a matter of law, that the obligation alleged to acquire the block of leases and pay the bonus in the event of the production of oil or gas in paying quantities, within the "block," are not within the purview of the agreement. Tucker v. Boyd, Tex., 293 S.W.2d 841.

■ The lease refers to "Lessee's Block." As a matter of common knowledge, a "block of leases" means several leases within an immediate vicinity. Lessee's "block of leases" within the vicinity of appellees' land could be located by such reference with reasonable certainty. Taylor v. Lester, Tex. Civ.App., 12 S.W.2d 1097, wr. ref.; Pickett v. Bishop, 148 Tex. 207, 223 S.W.2d 222.

■ The agreement to pay the $50 per acre bonus for the lease is indicated by the reservation. Appellant has much to say about the attempted reservation of the ⅛ of ⅞ of all oil, gas or other minerals, "either" from the "block" or from the "tract" described in the lease; his chief complaint being that lessors had no right, as a matter of law, to reserve a royalty from land they did not own. A "pooled" or "unitized" lease is one in which two or more tracts of land in which two or more people own an interest is included in a single lease by contract between the parties. Ward v. Gohlke, Tex. Civ.App., 279 S.W.2d 422, wr. ref., and authorities therein cited. When appellees agreed for appellant to pool their lease with other leases to form a "block," the "block" became a "pooled" or "unitized" block, and lessors became entitled to a ⅛ of ⅞ of appellant's interest in the block upon the happening of the production of oil or gas until the $50 per acre bonus for the 76 mineral-acre interest was paid. And parol evidence

to fully explain the consideration was admissible. Kistler v. Latham, Tex.Civ.App., 255 S.W. 983, opinion adopted by the Supreme Court. Points 1 through 4 are overruled.

By Point 5, appellant challenges the judgment of the trial court on the ground that it was barred by the four-year statute of limitation, which statute was pleaded as a defense to the suit. Production of gas in the block in paying quantities was not definitely determined until April 21, 1952. Denial of liability for the $50 bonus was not made until after March 7, 1953. The condition of the lease was that the $50 was to be paid on condition of production. The contingent condition did not occur until April 21, 1952. This question of limitation is settled by the case of Lallier v. Mueller, Tex.Civ.App., 300 S.W.2d 293, wr. ref., n. r. e., in which the court cited the case of Ferguson v. Mansfield, 114 Tex. 112, 263 S.W. 894, 900, and quoted therefrom as follows:

"It is quite elementary that an instrument payable upon a condition which does not import an absolute liability is not payable until that condition has happened."

Appellees definitely had no cause of action under the lease involved in this suit, at least until production of the gas in paying quantities was definitely determined, and probably not until liability was denied. But since the date of production came within four years of the date the suit was filed, June 22, 1955, the cause of action is not barred by the four-year statute of limitation.

By Point 13, appellant challenges the judgment of the trial court for being in excess of the amount prayed for. We are unable to reconcile the amount with the pleadings and the evidence. Seventy-six acres at $50 per acre would amount to $3,800; against this there is due a credit and offset of $123.97, leaving a balance due of $3,676.03. This point will be sustained and judgment reformed so as to conform to the pleadings and evidence, and as reformed, will be affirmed.

We have carefully examined appellant's other points of error, find them to be without merit, and they are respectfully overruled.

Finding no error in the record, the judgment of the trial court is affirmed as reformed.