## IMES et al. v. GLOBE OIL & REFINING CO. et al.

No. 27845.    Nov. 29, 1938.

Wallace E. Robertson, for plaintiff in error Chester Imes.

Elton M. Hyder, for plaintiff in error Union-That-Nothing-Be-Lost.

Paul G. Darrough, for plaintiff in error J. Leroy Sadler.

W. H. Francis and Blakeney, Wallace, Brown & Blakeney, for plaintiff in error Magnolia Petroleum Company.

Hayes, Richardson, Shartel, Gilliland & Jordan, Harper & Boesche, W. R. Withington, and Willingham & Farriss, for defendants in error.

BAYLESS, V. C. J.   Chester Imes et al. appeal from a judgment of the district court of Oklahoma county in favor of Globe Oil & Refining Company et al.

The owners of 21 lots in blocks 1 and 2 of J. W. Craig's subdivision of Fruitland addition to Oklahoma City executed what is known as a community lease, and by October 28, 1931, Stauffer Petroleum Company was the owner and holder thereof. All of these lessors seemed to have executed this lease within a short space of time.

The original lease contains a provision relating to the extension thereof to other and additional lots. The attempted exercise of this power is the basis for the controversy herein. Such provision reading:

"It being understood and agreed that any lot, lots or parcels of land embraced within the outer boundary lines of the above-described block or blocks' and addition to Oklahoma City. may at any time be included within the terms hereof and become a part of the leased premises covered hereby. * * *"

The lease also provides:

"It is further agreed that copies of this lease may be executed at any time by owners of any lot or lots in said lots one (1) to twenty (20) block one (1), and lots one (1) to seventeen (17) incl. block two (2). J. W. Craig's Sub. block 19, Fruitland addition to Oklahoma City, Oklahoma, and such executed copies shall have the same force and effect as though such parties and all parties thereto had executed the same copy of this lease and all such copies shall be deemed to be originals and to constitute but one lease and that all parties executing such copies as lessors shall have the same rights and relations as if all had executed the same copy at the same time."

And further provides:

"It is further agreed that lessee may at any time without the consent of lessors,

consolidate, jointly operate, and develop this lease and the land covered hereby with any other lease or leases covering any lot, lots or parcels of land embraced within the outer boundary lines of the J. W. Craig's Sub. of block 19, Fruitland addition to Oklahoma City, Oklahoma. * * *"

Two wells were brought in on these lots, one on September 28, 1931, and on September 12, 1933.

March 31, 1934, the owners of six other lots within the boundaries involved executed leases on such lots and it was sought to bring these lots under the terms of the original lease and to obtain for their owners a pro rata share of the royalty from these two wells.

The argument between the parties may be summarized as follows: Plaintiffs contend that the repetitious use of the phrase "at any time" in the quoted provisions of the lease meant literally "at any time" and that the date of the later leases is within such period; whereas, defendants contended that the phrase "at any time" meant within a reasonable time in view of the circumstances, and that the circumstances clearly support the finding of the trial court that a reasonable time had elapsed before the date of the later lease.

The phrase "at any time" is not one indicating unlimited time. " 'At any time.' A relative and flexible term not susceptible of precise definition. It has been said that its intendment in a particular case necessarily depends upon the context and the attending circumstances. * * *" 7 C. J. S. At p. 158.

Read literally, there would be no relativity or flexibility in the lease. It would be synonymous with "forever" or with words of fee simple. Virtually all simple contracts are made for definite or relatively short terms designed to be accomplished within the sphere of activity of the parties and the subject matter dealt with. The purpose to be accomplished is always an indicative quality.

In Fletcher v. Lyon, 93 Ark. 5, 123 S. W. 801, the sale of timber was accomplished by the reservation of a right of pasturage. Grantee was given the right to remove the timber "at any time." It is said therein:

"Considering the grant as a whole, it does not convey the title in fee simple. The effect of it is to give to the grantee the beneficial interest only until the timber on that and other lands shall be cut and removed and the products thereof, and also the 'manufacturing, shipping and other lumbering and logging operations over or upon the same "shall be finished." ' No time is specified within which this is to be done; and unless the deed be construed to give an unlimited time, at the option of the grantee, it must be held that a reasonable time was meant. * * *

"The timber deed involved in the other case conveys 'all timber standing or fallen, with the right to cut and remove same at any time.' Does this mean that the grantee has an unlimited time within which to remove * * * it at their own convenience, without regard to lapse of time. Then they can by mere inaction, forever deprive plaintiffs of the enjoyment of the rights which they expressly reserved in the deed. Such is not a reasonable or just interpretation of the language of the contract. Carson v. Lumber Co., supra. If the words 'at any time' be given their literal meaning, the defendant may await all time to remove the timber; and, if not, the words must be held to mean a reasonable time, without unnecessary delay, the same as if no time at all were specified. We conclude that the latter is the proper interpretation of the language of the deed. This court has said: 'What is a reasonable time is generally a mixed question of law and fact. The acts are to be ascertained by an inquiry into the conditions of the land and timber, the obstacles opposing and the facilities favoring, and the conditions surrounding, the parties at the time the contract was made. When all the circumstances are considered and the facts are determined, the law will declare whether reasonable time has expired for cutting and removing the timber conveyed. No fixed rules can be established for ascertaining what is a reasonable time. The facts and circumstances of each particular case must determine this.' "

Parsons v. Boggie, 139 Ore. 469, 11 P.2d 280, is an analogous case involving a timber cutting contract using the same phrase. It is said:

"Having determined that the timber must be removed within a reasonable time, the next question naturally presents itself, what is a reasonable time? This question depends upon the particular facts in each case. * * *"

State v. Board, etc., 89 Mont. 37, 296 P. 1, involves the construction of an amendatory statute which provided that land acquired by a county for delinquent tax could thereafter be sold at any time. In discussing this term, it is said:

"But the term 'at any time' was not intended to be taken literally, else a sale could be made before the county acquired title, or it could be made in ten or twenty, or fifty or a hundred years. What is in-

tended by that term is a reasonable time, and what is a reasonable time is 'so much time as is necessary under the circumstances. * * * what the * * * duty requires should be done in a particular case.' Henderson v. Daniels, 62 Mont. 363, 205 P. 964, 967, citing Bowen v. Detroit City Railway Co., 54 Mich. 496, 20 N. W. 559, 52 Am. Rep. 822."

Therefore, we hold that, generally speaking, the phrase "at any time" is one denoting a limited period of time. A period of time limited by the circumstances of the case.

Looking at the facts in this case, we are of the opinion that the trial court correctly determined that the later leases were not executed and delivered within the period contemplated by the parties, which they defined as "at any time."

In arriving at the parties' intendment by the use of this word, we must always remember that we are endeavoring to say now what the parties intended to say. This rule is well stated in 13 C. J. 521, sec. 482:

"The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties, so far as that may be done without contravention of legal principles. Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. No matter how broad or how general the terms of the contract may be it will extend only to those matters with reference to which the parties intended to contract."

We have adopted this rule. See 4 Okla. Dig. (West) 394, Key 147. See, also, 6 R. C. L. 834, sec. 224 et seq. And 12 Am. Jur. 745, sec. 226, et seq.

The owners of these properties entered into a joint venture, in a sense, to obtain the benefits which would accrue from the exploration and the development of their property and near-by property for oil and gas purposes. Their purpose was to get as many owners within the specified area to join as could be prevailed upon, and to procure the exploration and development of their lots to their mutual advantage. Enough signed to give adequate area, to prevent drainage and to enable them to derive an adequate return.

In their efforts to procure a group of owners of a sufficient area they virtually made lessee and his assigns their agent. But, in all of this, the parties had in mind a very definite limitation. That is, that everybody brought into the venture would be a contributor rather than a drawback. This, too, must be understood in a relative sense. The parties had in mind that the status would become static.

With this in mind let us look at the situation. Twenty-one lots were bound together. Two wells were drilled. Months thereafter, six more lots were sought to be added. The situation had become static in so far as the 21 lots were concerned, and their relation to each other and to lessee had been firmly established upon terms not to be disturbed for reasons less potent than those existing which induced them to venture.

There was much evidence given on the issue of whether these six lots had not been condemned as valueless for oil and gas purposes. The evidence sustains the finding that they were valueless. This being so, it cannot be said that the owners of the 21 lots agreed that "at any time" meant a time in the future, after they had ventured and won, others might thereafter, when they had independently ventured and lost, attach themselves and share. It is no refutation of this to say that the result would have been the same had the owners of the six lots joined early. They did not join then. At the time the lease was signed the group of owners were venturing alike without previous knowledge.

The cases cited by plaintiff involving interpretations of the phrase "at any time" are not sufficiently analogous to justify us following them to an opposite conclusion to the one we are reaching. Indeed, we doubt that they imply the sweeping scope to time intended. In these cases it so happened that what was being sought to be done fell within a reasonable period of time considering the subjects to which they applied.

As pointed out above, the lessee was virtually the agent of the lessors, and for this reason he was bound to use good faith. To an extent their interests were mutual. After production, they parted somewhat. In this case, the lessors had everything to lose and nothing to gain, whereas lessee stood to gain 6/27th of the ⅛ production, which came from lessors. It is not reasonable for him to argue that lessors were willing for him to acquire adjoining lots thereafter and progressively increase his share and to the same extent decrease theirs. The cases cited holding that he could not promote or acquire antagonistic

interests are applicable. Probst v. Hughes, 143 Okla. 11, 286 P. 875, 69 A. L. R. 929.

The judgment is affirmed.

OSBORN, C. J., and CORN, HURST, and DAVISON, JJ., concur.