Mouzon TILLER et ux., Appellants,

v.

Bert FIELDS et al., Appellees.

No. 6948.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 28, 1957.

Rehearing Denied March 28, 1957.

LeRoy LaSalle, Linward Shivers, Carthage, for appellants.

Abney, Abney & Baldwin, Marshall, for appellees.

FANNING, Justice.

Mouzon Tiller and wife, Frances Tiller, brought suit against Bert Fields, W. S. Fields and H. T. Manning, Trustee of the Bert Fields, Jr. Trust, seeking a declaratory judgment that the pooling provision contained in an oil and gas lease executed by the Tillers was altered after the execution of such lease by the deletion of the words "such pooling to be into a unit or units not exceeding 40 acres each," and that therefore the unitization of such lease and the tracts described therein with other tracts and leases into a 590.05 acre gas unit was unauthorized. The plaintiffs claimed in the alternative that if the 40 acre unit limitation was deleted prior to the execution of the lease, that the resulting pooling provision was ineffective to authorize the formation of the 590.05 acre gas unit because such provision was vague, indefinite and in violation of the Statute of Frauds and the Conveyancing Statutes. Plaintiffs further contended that the unit was void because the Unit Declaration creating the unit was not filed for record until after the well was drilled. The cause was tried before a jury and in response to the single special issue submitted, the jury found that the words "such pooling to be into a unit or units not exceeding 40 acres each" were deleted prior to the execution of the lease. The trial court rendered judgment for defendants-appellees, and found that the lease in question and the tracts described therein were validly pooled and unitized into the 590.05 acre Bert Fields et al.—Mouzon Tiller Gas Unit. Plaintiffs have appealed.

Appellants present six points on appeal wherein they contend to the effect: that the pooling provision in question (as deleted) is in violation of the Statute of Frauds and the Conveyancing Statutes of this State; that the lease in question and the lands described therein were not validly pooled and unitized into the gas unit in question; that plaintiffs were entitled to receive ⅛ of all the oil, gas and other minerals produced from the well drilled on their land described in the lease; and that the unit declaration in question was not validly established and was ineffective to bind or pool plaintiffs' royalty interest

under the lease in question because the unit declaration was not filed for record until after the gas well on the lease in question was drilled.

Appellants executed an oil and gas lease to H. T. Manning, dated September 15, 1944, for a primary term of 10 years from that date, which covered the interests of the appellants in two tracts described as 53⅓ acres each in the William Tiller Survey, in Harrison County, Texas. This lease contained the following pooling provision:

"Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said premises in compliance with the spacing rules of the Railroad Commission of Texas or other lawful authority, or when to do so would, in the judgment of Lessee promote the conservation of the oil and gas in and under and that may be produced from said premises. Lessee shall execute in writing an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated, for all purposes except the payments of royalties on production from the pooled unit, as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of the royalties elsewhere herein specified, Lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein on an acreage basis bears to the total acreage so pooled in the particular unit involved."

The jury found that the 40 acre provision was stricken from the lease prior to execution. Appellants present no point attacking this finding of the jury.

In 1952, the appellees, Bert Fields, W. S. Fields, and H. T. Manning, Trustee of the Bert Fields, Jr. Trust, the then holders of said lease, by written Unit Declaration dated and executed on April 1, 1952, filed for record on July 18, 1952, and recorded on July 23, 1952, in the Deed Records of Harrison County, Texas, pooled and unitized this lease and the tracts described therein, along with other leases and tracts also described therein into the "Bert Fields et al. Mouzon Tiller Gas Unit" consisting of 590.05 acres of the William Tiller, James Shandoin and Mary Richardson Surveys. Subsequent to the execution of the Unit Declaration, the appellees drilled and completed a gas well on one of the tracts described in the appellants' lease and within the unitized area. This well is now, and has continuously since the date of first runs in 1952, produced gas in commercial quantities.

Appellants in their brief, after referring to a line of cases which held to the effect that the act of pooling or unitizing effects a cross-assignment of the royalties involved, state: "Whether a cross transfer of royalty interests among various lessors is accomplished by an effective act of unitization by a lessee or whether the act of pooling merely established and determines contractual relationships between the royalty owners whose interests are so unitized need not be decided here."

Both appellants and appellees take the position in their briefs that it is unnecessary to a decision in this case to decide the exact legal nature of the pooling provision. With this we concur.

Anticipatory provisions in leases for the commitment by the lessee of such leases to unitization, of necessity must be in general terms. Neither the lessor nor the lessee has any way of knowing at the time the lease is taken the facts with respect to which it

will be necessary for the lessee to apply his power. It is not practicable for the lessee to await the ascertainment of such facts. He knows from experience that because of the possibility of many changes in ownership of the lessor's interest as time goes on, it may be difficult to effect an agreement if the right to unitize is not included in the lease itself. Phillips Petroleum Co. v. Peterson, 10 Cir., 218 F.2d 926. The Texas courts, as well as other courts, have recognized these basic facts, and have consistently sustained the basic validity of lease pooling provisions and units formed under their authority. See the following authorities: Leopard v. Stanolind Oil & Gas Co., Tex.Civ.App., 220 S.W.2d 259, wr. ref., N.R.E.; Phillips Petroleum Co. v. Peterson, 218 F.2d 926, certiorari denied 349 U.S. 947, 75 S.Ct. 871, 99 L.Ed. 1273; Grimes v. La Gloria Corp., Tex.Civ.App., 251 S.W.2d 755, wr. ref., N.R.E.; Miles v. Amerada Petroleum Corp., Tex.Civ.App., 241 S.W.2d 822, wr. ref., N.R.E.; Scott v. Pure Oil Co., 5 Cir., 194 F.2d 393; Hoffman, Voluntary Pooling and Unitization, pp. 97–101.

The case of Leopard v. Stanolind Oil & Gas Co., Tex.Civ.App., 220 S.W.2d 259, 261, wr. ref., N.R.E., involved a lease which contained two pooling provisions, one with respect to gas rights which did not have any acreage limitation, and was in the following language:

" 'Lessee is hereby given authority to pool, unitize or combine all or any part of the land covered by this lease in so far as the gas and gas rights are concerned, at any time and from time to time, with any other land, lease or leases, when, in the judgment of the Lessee, it is advisable to do so in order properly to develop and operate said premises, or to comply with any federal or state law, order, rule or regulation, or to establish units for recycling or other auxiliary production purposes. If gas production is found on such unitized acreage, it shall be treated as if production is had from the land covered by this lease, whether or not the well

or wells be located on the above described premises. If gas production is obtained from the above described land or from any land with which it is pooled, unitized or combined, then, in lieu of the gas royalty hereinabove provided for, Lessor shall receive, as royalty on gas produced from the unitized area, that portion of the royalty herein specified as the amount of the above described acreage placed in any unit or combination bears to the Total amount of acreage at any time unitized, pooled or combined.' "

The lease also contained a provision which authorized the lessee to unitize the leased land and other land, provided that such unit should not exceed 40 acres. The court held that the 40 acre limitation applied to oil units and upheld the pooling provision with respect to gas which did not contain an acreage limitation and is very similar to the pooling provision in controversy. It is true that the lessors in that case ratified the unitization by the lessee; however, the decision of the court with respect to the validity of the gas pooling provision was reached independently of the ratification feature and was upheld by the court in the following significant language, "We therefore hold that the intention of the parties was that the gas and gas rights, as distinguished from oil and other minerals, could be unitized with land in excess of 40 acres, and that the 40 acre limitation in Paragraph 4 of the lease applied only to oil and other minerals." The court in this case did not attempt to classify or discuss the nature of the lease pooling provision but simply held the provision to be valid.

In Phillips Petroleum Co. v. Peterson, 218 F.2d 926, 933, certiorari denied, 349 U.S. 947, 75 S.Ct. 871, 99 L.Ed. 1273, a much broader pooling provision than the one in the instant case was involved, which pooling provision did not contain any acreage limitation and merely authorized pooling in *the same general area* by the lessee entering into a plan approved by governmental authority and subject to change at

any time. The pooling clause provided that the lessors would formally consent to any unit plan. Some lessors refused to consent to such a unit plan and the oil company brought suit seeking a declaratory judgment that the pooling clause was valid and binding on all of the lessors. The appellate court upheld the pooling provision against the contention that it violated the rule against perpetuities and also against the contention that it was void for uncertainty and indefiniteness. In connection with the question of uncertainty and indefiniteness, the court stated that the relationship of lessor and lessee under a lease pooling provision is, at least, analagous to that of principal and agent and is in the nature of a power coupled with an interest, and that therefore the court's problem was not to determine whether the pooling provision was sufficiently definite and certain to bind the lessors and lessees or landowners, but to determine whether its provisions were sufficient to grant authority to the lessee, as the lessor's agent, to enter into a unit plan for development and operation and to make a future contract to effectuate such plan. The court then noted the broad powers of an agent as follows:

"* * * the authority of an agent may be couched in general terms; may be as broad as the principal chooses to make it; may grant power to the agent to exercise his judgment and broad discretion, and may vest in the agent the authority to do for his principal any lawful act performable by the principal. * * *"

and after a discussion of the application of the rules of law of agency to the lease pooling clause, held that such clause was sufficient to authorize the lessee to unitize the land described in the lease with other lands; and stated further:

"The lessors, in effect, agreed that subject to such limitations as were written into § 12, and such further limitations as were implied in the lease and relationship created, Phillips was authorized to enter into a plan of unitization and an agreement to effectuate such plan, which would be binding on the lessors, provided it was approved by a governmental authority.

"We are of the opinion that § 12 fully authorized Phillips to unitize the land covered by the leases involved in the instant case and to enter into a contract to effectuate the unit plan of development and operation, so long as Phillips acted in good faith, fairly, and with a due regard for the interests of the lessors, as well as its own interests, and that § 12 was sufficiently specific to measure the scope of the agent's authority in the premises."

It has also been held by the Supreme Court of Texas that an agent may bind his principal to a contract for the sale or lease of land, although his authority rests only in parol. See Hoover v. Wukasch, 152 Tex. 111, 254 S.W.2d 507, and cases there cited.

In the instant case the gas unit formed consisted of only 590.05 acres, which was less acreage than the usual 640 acres (with 10% for tolerance) gas unit authorized by the Railroad Commission of Texas through its lawfully enacted spacing rules and regulations for gas units. The lease in question was placed in a unit with adjoining lands in *"the immediate vicinity"* and the unit in question was clearly *"in compliance with the spacing rules of the Railroad Commission of Texas,"* all as provided in the pooling provision. The unit declaration itself (which was filed pursuant to the power granted to the lessee by the pooling provisions) contains a full and complete metes and bounds description of the unit area. There is no question but that the pooling in the instant case was done in good faith; in fact, appellants have not contended that there was any question of bad faith on the part of appellees; no jury question was submitted concerning such a question, and it must be presumed in support of the judgment

rendered by the trial court that the lease in question was pooled fairly and in good faith by the appellees.

Appellants in their brief cite the case of Stekoll Petroleum Co. v. Hamilton, 152 Tex. 182, 255 S.W.2d 187. We think a careful analysis of this case will show that it is supportive of appellees' position rather than that of appellants' because it is clearly recognized in the Stekoll case that the statute of frauds is met where the contract, instrument or agreement, gives either party the unqualified right or power to make a selection or determination of the details without the necessity of further agreement or approval of the other party. Also in this connection see Taylor v. Lester, Tex. Civ.App., 12 S.W.2d 1097, wr. ref.; Gray v. Producers' Oil Co., Tex.Civ.App., 227 S.W. 240; Rountree v. Bridwell, Tex.Civ. App., 269 S.W.2d 824, wr. ref., N.R.E.; Lingeman v. Shirk, 15 Ind.App. 432, 43 N.E. 33; Peckham v. Lane, 81 Kan. 489, 106 P. 464, 25 L.R.A.,N.S., 967. The lease pooling provision in question in this case clearly gives the lessee the broad and unqualified power to select or determine the lands (in the immediate vicinity) to be placed in the unit—this broad power is subject to the other terms of the pooling provision that same be in units authorized by the Railroad Commission of Texas or other regulatory body, etc.

As we view appellants' position in their brief, they readily admit that pooling provisions generally are valid, especially the usual 40 acre unit provisions for oil and the usual 640 acre (with 10% for tolerance) unit provisions for gas, and quote samples of these usual provisions in their brief. However, they contend that a lease pooling provision, such as the one in question here, which contains no acreage restriction is invalid. Their further attack upon the provision in question upon the proposition that the pooling provision does not specify "the approximate area to which the rights relate" is a basic attack which could be made upon the usual pooling clauses for a 40 acre unit for oil and a 640 acre unit (with 10% for tolerance) for gas because these pooling provisions do not describe by metes and bounds or definitely specify the area which is to be pooled. Obviously the anticipatory pooling power granted in advance in the lease must be broad, because at that time the lessee does not know what land will be deemed advisable to pool and unitize, nor what requirements will be made by governmental authority. And as a practical matter in Texas the lease pooling provision without an acreage limitation is subject to about the same restrictions as the lease pooling provision which authorizes 40 acre units for oil and 640 acres with a 10% tolerance for gas, as all of these provisions require generally that the pooling be of land, lease or leases in the immediate vicinity, are restricted to development and operation in compliance with the spacing rules of the Railroad Commission of Texas or other lawful authority, and authorize the creation of units of the maximum size authorized by the spacing rules of the Railroad Commission of Texas or other regulatory body without acreage limitation. The lessee, pooling under a lease pooling clause without acreage limitation, we think is also subject to the implied requirement that he act fairly and in good faith. And as hereinbefore stated, the pooled gas unit in this case consisted of 590.05 acres, which was less acreage than the maximum allowed by the Railroad Commission of Texas, and there was no evidence of bad faith on the part of appellees in making the unit declaration in question.

We hold that the pooling provision in question here does not violate the Statute of Frauds, nor does it violate the conveyancing statutes of this State.

We further hold that the lease in question and the lands described therein were validly pooled and unitized into the 590.05 acre Bert Fields et al.—Mouzon Tiller Gas Unit.

We further hold that the fact that the unit declaration creating the gas unit

in question was not filed for record until after the unit well was drilled did not affect the validity of the unit under the facts in this case.

The lease in question was executed on September 15, 1944, for a primary term of 10 years from that date. Appellees pooled and unitized this lease and the tracts described therein with other leases and tracts into the 590.05 acre unit in question by written Unit Declaration, which written instrument was dated, executed and acknowledged by appellees on April 1, 1952. The instrument was filed for record on July 18, 1952, and was duly recorded on July 23, 1952, in the Deed Records of Harrison County, Texas. A gas well was completed (on one of the tracts described in appellants' lease within the unitized area) insofar as drilling was concerned, on June 11, 1952; however, it was necessary for various tests to be made before the commencement of production from said well. There was no evidence introduced as to the extent or nature of such tests, nor as to the exact date when production commenced from said well, but appellees state in their brief that the first runs from the well were in the year 1952.

In Willson v. Superior Oil Co., Tex.Civ. App., 274 S.W.2d 947, 951, wr. ref., N.R.E., it is stated:

"We think it is clear that the parties intended the effective date of the operating agreement to be the date that it bore on its face, to wit, February 2, 1953, and we attach no significance to the fact that the instrument was not actually signed by appellee until March 30, 1953, after the instrument had been circulated among Jackson and his associates. In 10 Tex.Jur., Contracts, Sec. 194, p. 339, it is stated: '* * * the time for which it is to run (referring to a contract) is to be computed from the date it bears and not from the date of its delivery.'"

■ The Unit Declaration instrument dated April 1, 1952, states, "the under-signed hereby combine and pool the aforesaid oil and gas leases and so much of the acreage by them as is embraced within the unitized area, etc." We think it is clear that appellees in executing the unit declaration in question intended that it be effective as of the date of execution, to-wit, April 1, 1952. Also the pooling provision in question states, "Lessee shall execute in writing an instrument identifying and describing the pooled acreage," and there is no provision in the pooling agreement itself requiring the recordation of the pooling agreement. We hold that April 1, 1952, was the effective date of the pooling in question.

■ Also the pooling was done well within the primary term of the lease. In Boone v. Kerr-McGee Oil Industries, 10 Cir., 217 F.2d 63, it was held that the lessee, who was acting in good faith, was within his contract right to pool after production had been obtained and a few months prior to the expiration of the primary term. In Imes v. Globe Oil & Refining Co., 184 Okl. 79, 84 P.2d 1106, the Oklahoma court held, under the particular facts in that case, that pooling after production was not done in a reasonable time and was not done in good faith. However, in the later case of Gillham v. Jenkins, 206 Okl. 440, 244 P.2d 291, 294, the same Oklahoma court upheld pooling after production had been obtained, finding that the acts of the lessees in pooling after production were "done in good faith and fair dealing and within a reasonable time," and on this basis distinguished the Imes v. Globe case. In 10 Southwestern Law Review, pp. 165–181, in an article by Louis P. Bickel, entitled "The Right of the Lessee to Pool the Mineral Interest of the Lessor Before and After the Expiration of the Primary Term," there is a discussion of the cases concerning this matter and the conclusion is reached on page 175 of the article that "it is clear that the lessee is safe in unitizing the land on which there is already production, provided that he is not attempting to perpet-

uate a fraud or violate any of his contractual duties to the lessor."

Each and all of appellants' points have been carefully considered and are respectfully overruled.

The judgment of the trial court is affirmed.