**Mildred Lucy PATERSON, Plaintiff,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, a Foreign Corporation, Defendant.**

No. 74–363–C.

United States District Court,
E. D. Oklahoma.

March 22, 1976.

Edwin W. Ash, Okmulgee, Okl., for plaintiff.

Nancy Batchelor Coats, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

MORRIS, Chief Judge.

This case involves the interpretation of the defendant's Plan for Employees' Pensions, Disability Benefits and Death Benefits (hereinafter referred to as the Plan). The plaintiff seeks to recover death benefits which she says are owed to her because at the time of his death her husband, Robert D. Paterson, was an employee of the defendant, Southwestern Bell Telephone Company, and covered by the Plan. It is the defendant's

position that no benefits under the Plan are due the plaintiff because the defendant's payment of a workmen's compensation award to plaintiff satisfies defendant's liability under the Plan.

At the conclusion of all evidence at trial the plaintiff argued: (1) that the workmen's compensation award does not affect defendant's obligations under the Plan and (2) even if the workmen's compensation award does offset defendant's obligations under the Plan, the defendant still owes plaintiff the difference between the amount of the award and the benefit amount prescribed by the Plan for death due to an on-the-job accident. The defendant on the other hand argues (1) that workmen's compensation awards are included in the provision of defendant's Plan which makes defendant liable only for the excess of the amount prescribed in the Plan which is above any benefit or payment payable under law; and (2) that no such excess amount exists in this case because prior to the award of workmen's compensation to plaintiff the defendant's Employees' Benefit Committee had determined that plaintiff was eligible only for benefits due as a result of death caused by sickness or accident off-the-job and not for benefits prescribed for accidental death on-the-job; that the amount due to plaintiff was less than the amount of the workmen's compensation award; and that the decision of the Employees' Benefit Committee is final and conclusive as to this matter.

This case was tried to the Court without a jury. Based upon the evidence adduced at trial the Court finds the facts to be as follows: (1) plaintiff's husband was an employee of defendant; (2) he reported to work on the morning of March 12, 1973, at about 8:00 a. m.; (3) he left work and returned home some time between 9:00 and 9:15 a. m. that morning; (4) later that morning he died; (5) the cause of death is myocardial infarction; (6) defendant's Oklahoma Area Employees' Benefit Committee met on March 26, 1973, considered the case of plaintiff's husband, determined that

plaintiff was entitled only to benefits due to death from accident or sickness off the job, and submitted to the general Employees' Benefit Committee in St. Louis, Missouri, a recommendation that such benefits be paid; (7) that plaintiff instituted an action in the Oklahoma State Industrial Court to recover death benefits under the workmen's compensation laws; (8) that when defendant's area committee learned that such action had been commenced, the area Committee notified the general Committee and the general Committee postponed consideration of plaintiff's claim, pending the outcome of the State Industrial Court case; (9) that the State Industrial Court eventually awarded $22,000 in death benefits to the beneficiaries of Robert D. Paterson and such amount was paid by defendant; (10) that in August, 1974, the area Committee recommended "that as provided in Section 8, Paragraph 27 of the Plan, no death benefits be paid under the Plan as the amount of payment prescribed by law, $22,000, exceeds the amount prescribed in the Plan, $10,-387.80," (defendant's Exhibit No. 3); and (11) that the general Committee acted in accordance with this recommendation on September 9, 1974.

The Court further finds that the Plan was adopted voluntarily by the defendant in 1913; that it is a noncontributory plan in that it is funded solely by the employer's contributions; that the Employees' Benefit Committee has determined that workmen's compensation awards are included in the paragraph 27 excess provision of the Plan; that the Plan has been the subject of negotiations between the defendant and the Communications Workers of America, a trade union of which plaintiff's decedent was a member, and is mentioned in Article VIII of the most recent contract between the union and the defendant; and that  ticle VIII provides:

"ARTICLE VIII
PENSIONS, DISABILITY BENEFITS, AND DEATH BENEFITS

"During the term of this Agreement, no change may be made without the

consent of the Union in the existing 'Plan for Employees' Pensions, Disability Benefits, and Death Benefits' which would reduce or diminish the benefits or privileges provided thereunder. Any claim that such benefits or privileges have been so diminished or reduced may be presented as a grievance and if not resolved by the parties under their grievance machinery may be submitted to arbitration pursuant to the provisions of Article VI hereof but in any such case any decision or action of the Company shall be controlling unless shown to have been discriminatory or in bad faith and only the question of bad faith or discrimination shall be subject to the grievance procedure or arbitration."

What is disputed here is the interpretation and validity of the Plan with respect to (1) the effect of the workmen's compensation award and (2) the validity of the Committee's determination that under the Plan the only benefits due in this case were those prescribed for death resulting from an *off*-the-job accident or sickness and not those prescribed for death resulting from an accidental injury *on*-the-job. These two issues will be discussed separately.

### I. *Effect of the Workmen's Compensation Award*

The plaintiff contends that the excess provision of defendant's Plan cannot be construed so as to apply to workmen's compensation awards. Alternatively, plaintiff argues that if the Plan is so construed, it is invalid, because such a construction constitutes overreaching discrimination, capriciousness, or bad faith, or because such a construction is contrary to public policy.

The defendant contends that workmen's compensation awards are included in the excess clause of the Plan and that such a construction of the excess clause is in 'no way improper, unconscionable or contrary to law.

The provision of the Plan principally involved is section eight, paragraph 27, which provides as follows:

"In case any benefit or pension, which the Committee shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any employee of the Company, to his beneficiaries or to his annuitant under such law, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan; provided, however, that no benefit or pension payable under this Plan shall be reduced by reason of any governmental benefit or pension payable on account of military service or on or after June 1, 1969, by reason of any benefit which the recipient would be entitled to receive under the Social Security Act. In those cases where, because of differences in the beneficiaries, or differences in the time or methods of payment, or otherwise, whether there is such excess or not is not ascertainable by mere comparison but adjustments are necessary, the Committee in its discretion is authorized to determine whether or not in fact any such excess exists, and in case of such excess, to make the adjustments necessary to carry out in a fair and equitable manner the spirit of the provision for the payment of such excess."

Plaintiff first contends that paragraph 27 of defendant's plan is ambiguous and that therefore it must be construed against the defendant because the defendant chose the language being construed. In *Hurd v. Illinois Bell Telephone Co.*, 136 F.Supp. 125 (N.D.Ill.1955) the court was also required to construe paragraph 27 of this Plan and there refused to apply that principle. In *Hurd*, the Court held that social security benefits are among those benefits and pensions which invoke the excess provisions of paragraph 27, despite plaintiff's urging of what was there referred to as the doctrine of *contra proferentum*. The Court said:

"The plaintiffs have relied on this rule as a command to adopt each interpretation of the Bell Plan which they put

forward. But it can have no such effect. At best it is a secondary rule of interpretation, a 'last resort' which may be invoked after all of the ordinary interpretative guides have been exhausted and there remain two or more reasonable interpretations of the language in question. [Citations omitted.] The defect in plaintiffs' case is that they have applied none of the other principles of interpretation. Rather, they have isolated certain words or phrases and assigned to them a precise meaning which was designed to create ambiguity and then resolved the resulting ambiguity in their own favor. Such a course would not lead to a proper interpretation of the contract." 136 F.Supp. at 134.

In *Hurd* the Court went on to find that the purpose of the Plan and the intent of the language in paragraph 27 was to include just such social insurance payments as those provided by Social Security. The Court found such purpose and intent controlling in interpreting the Plan.

In interpreting the Plan, the court in *Hurd* sought to discover the intent of the parties. The court noted the difficulties in ascertaining intent in such circumstances, where the contract is initiated as a voluntary, unnegotiated undertaking. However, the court observed that while this difficulty does not mean that the only "intention" to be considered is that of the defendants, neither does it require that disputes be resolved blindly in favor of the employees. As the court pointed out,

"The reluctance of employees to study a long, and sometimes technical, pension plan is perhaps understandable. But their rights come from this Plan and it is difficult to weigh their understanding of these rights knowing that in some cases it is not based on a close familiarity with the terms of the Bell Plan." 136 F.Supp. at 155.

The court in *Hurd* ultimately based its decision on the fact that, while there was "virtually no independent evidence of what agreement the plaintiffs, or any

of the employees, thought they were sealing by continuing in the employment of the defendants," there was "abundant evidence of what the defendants believed the Plan meant." *Id.* The Court concluded that:

"While the court could not permit the defendants to create the right to offset Social Security merely by declaring that it existed, neither would a proper result be achieved by ignoring as self-serving all of the explanations which the defendants have made of the Plan as they have adapted it to new circumstances. Whenever in this process the defendants have made known their intended meaning to the employees, or every reasonable step has been taken to inform them, the court has given considerable weight to such expressions." 136 F.Supp. at 155–56.

Thus, the court in *Hurd* "attempted to reconcile accepted principles of interpretation with the special nature of a pension contract like the Bell Plan," (*Id.* at 156) in discovering the intent of the parties.

█ Under Oklahoma law, as under the Illinois law relied upon in *Hurd,* the cardinal consideration in the construction of contracts is the intent of the parties. *Universal Underwriters Ins. Co. v. Bush,* 272 F.2d 675 (10th Cir. 1960); *Kelso v. Kelso,* 225 F.2d 918 (10th Cir. 1955). And in arriving at the intent of the parties the court may consider the subsequent conduct of the parties (*Gillham v. Jenkins,* 206 Okl. 440, 244 P.2d 291 (1952); *Washoma Petroleum Co. v. Eason Oil Co.,* 173 Okl. 430, 49 P.2d 709 (1935); *Gladys Belle Oil Co. v. Clark,* 147 Okl. 211, 296 P. 461 (1931)) and the reasonableness of the interpretations advocated (*Mortgage Clearing Corp. v. Baughman Lumber Co.,* 435 P.2d 135 (Okl.1967)).

█ In this case plaintiff adduced no evidence of the intent of the parties with respect to paragraph 27 or workmen's compensation payments. She produced no evidence showing that the employees generally or plaintiff's husband in particular harbored any intent or conception of

the Plan different from the interpretation offered by defendant. Indeed, there was no evidence indicating that the employees were unaware of the effect given workmen's compensation or that any employee undertook or continued in employment with any misapprehension in that regard. Nor was there any evidence that the union was unaware of defendant's practice when it negotiated Article VIII of the 1971 agreement; there was no effort at that time to challenge defendant's interpretation.

On the other hand, there is considerable evidence tending to show that the intent of the parties was to include workmen's compensation payments in the excess provision. Defendant's Exhibit 4 shows that the Employees' Benefit Committee has treated workmen's compensation awards as within the meaning of paragraph 27 since 1919. Defendant's witness Francis Brockman, secretary of the General Committee, testified that all workmen's compensation payments are still so treated. Plaintiff's Exhibit 7, which is a booklet containing the Plan and a Summary of the Plan, shows that defendant's employees were or should have been aware that workmen's compensation benefits were included in the computation of benefits under the Plan. The "Summary" portion of the booklet (Plaintiff's Exhibit 7, p. 7), in describing benefits due "when death occurs from sickness or accident off duty," states:

"Note: The accident death benefits specified above *include payments required by Workmen's Compensation Laws.*" (Emphasis added.)

On the same page, at the bottom, the Summary again cautions:

"*Effect of Payments Provided by Law:*

Benefits payable under the Federal Social Security Act are in addition to pensions and benefits paid under this Plan. Under some circumstances as provided in Section 8, Paragraph 27 of the Plan, other benefits and pensions are subject to certain adjustments on account of payments provided by law."

In the light of these notifications by the defendant and the acquiescence by the employees and their union, the Court finds that by their conduct the parties have indicated that they intended the inclusion of workmen's compensation benefits within paragraph 27. Plaintiff has offered no evidence to the contrary.

Further, *Mortgage Clearing Corp., supra,* holds a reasonable interpretation is to be favored. In light of the fact that this Plan was adopted in 1913, prior to the enactment of the workmen's compensation laws, but at a time when they were legislatively imminent, and the fact that the paragraph specifies that it shall apply to "any law now in force or hereafter enacted," and the fact that paragraph 27 was applied to workmen's compensation awards immediately upon their enactment, the interpretation followed by defendant seems far more reasonable than its opposite.

Accordingly, the Court finds that workmen's compensation payments are among those benefits payable under law which invoke the provisions of paragraph 27.

In support of its interpretation defendant also points the Court to the provision in section 3, paragraph 3, of the Plan which states that "[the Employees' Benefit Committee] shall determine conclusively for all parties all questions arising in the administration of the Plan." In *Hurd,* this provision was similarly urged, but the Court there did not rely on it, noting that "courts generally do not look favorably upon provisions that give to one party to a contract the power to settle for itself any disputes arising under the agreement." 136 F.Supp. at 154–55. The Illinois court recognized that a number of decisions have upheld such provisions, but observed that:

"In all of these cases, . . . the actual decision before the pension board and before the court on review was one of an administrative nature— that is, applying the various rules and regulations of the pension plan to the case of an individual applicant for benefits. The . . . cases all raised

some question of eligibility under the plan—whether the employee had satisfied the requirement of continuous service, whether a beneficiary qualified as a dependent, etc. Such decisions involve a determination of the facts and an application of the provisions of the plan to the facts. From a judicial point of view these are questions of law and fact—on which the decision of the committee or board, under the decided cases, is conclusive if made in good faith. But they are decisions directed to the routine problems of administration of the plan. In none of these cases was the court asked to affirm the conclusiveness of a pension committee's legal interpretation of an important provision of the plan under which it asserted a broad power to affect the pension rights of all employees." *Id.* at 154.

Noting that the Plan provides only that Committee decisions will be conclusive as to "all questions arising in the administration of the Plan," the *Hurd* court found that the company intended a distinction between everyday administrative decisions and broad policy determinations. Hence, the court relied only on its own interpretation of paragraph 27, and not on the company's asserted right to make binding interpretations.

■ The situation in this case differs significantly. Here, as the plaintiff points out, the Plan has been the subject of labor contract negotiations between defendant and the Communication Workers of America, the union of which plaintiff's husband was a member. The Plan is now incorporated in the labor contract (see the quotation of Article VIII, above). That labor contract provision in effect enlarges the scope of paragraph 3 because it makes arbitrable only those changes in the Plan itself which diminish benefits and are discriminatory or in bad faith. Under Article VIII, the Committee's decisions about policy matters as well as about day-to-day administration, are binding absent a showing of bad faith or discrimination. As discussed below, no such showing has been made in this case. Under the labor contract, the Committee's determination of the effect to be given workmen's compensation payments stands.

■ Plaintiff next alleges that such a construction of paragraph 27 is discriminatory, overreaching, and in bad faith. Plaintiff adduced no evidence tending to show that the decision that workmen's compensation payments are included in the excess clause is unconscionable, overreaching, or in bad faith, and the Court finds that it is not. The defendant's admission that under paragraph 27 private insurance payments would not offset Plan payments is not evidence of discrimination. Paragraph 27 clearly applies only to benefits or pensions "payable under any law." Under such a provision it is not discriminatory to distinguish between private insurance proceeds and workmen's compensation payments. Nor is it bad faith to include workmen's compensation within such a classification. Nor does such an inclusion constitute overreaching. The undisputed evidence is that the defendant has been applying this interpretation to workmen's compensation payments since 1919. It is also not disputed—indeed it is urged by plaintiff—that the Plan, in its entirety and with its limitations, figured in the bargaining process between the union representing plaintiff's husband and the defendant which resulted in the labor agreement of 1971. Article VIII, that portion of the 1971 agreement which incorporates the Plan, does not modify the defendant's practice with respect to the effect of workmen's compensation payments on Plan benefits and pensions. These are not circumstances which suggest overreaching.

Plaintiff also argues that any such excess clause cannot be applied to workmen's compensation awards because public policy prohibits any provision which requires a waiver of compensation claims or forecloses a person's right to seek legal redress. But plaintiff has not waived her compensation claim nor has she been foreclosed from obtaining death benefits under the workmen's compensa-

tion law. Plaintiff's own experience proves a beneficiary who accepts a workmen's compensation award (in this case $22,000) is not worse off than if she had taken the amount authorized by the Committee $10,387.80) and so is in no way penalized for taking the compensation award. By the same token, had plaintiff been entitled to more under the Plan than under the award, she could have taken the award and received any excess amounts due under the Plan. The Plan does not a force a claimant to waive workmen's compensation benefits, foreclose a claimant from seeking such an award, or penalize one who receives such an award. What it does do is prevent a claimant from recovering *from the defendant twice for the same injury* —under the law and under the Plan. Plaintiff is simply prevented from recovering both a workmen's compensation award and benefits prescribed by the Plan; in effect, she is forced to take the larger of the two. Plaintiff does not show the Court in what way this is against public policy and indeed quite the opposite is true. To hold otherwise would be to discourage adoption of such plans and that result would be contrary to public policy.

Accordingly, the Court finds that paragraph 27 of the defendant's Plan is properly construed to include payments made under the workmen's compensation laws and that such a construction is not discriminatory, arbitrary, capricious, in bad faith, or contrary to public policy.

## II. *Validity of the Committee's Determination*

The Employees' Benefit Committee decided, in effect, that the death of plaintiff's husband was not due to an accidental injury arising out of and in the course of his employment but was due instead to sickness (defined by section 6, paragraph 1 of the Plan to include injury other than accidental injury arising out of and in the course of employment.) The benefits due under the latter classification are significantly smaller than those due under the former. In this case, had the Committee determined that

death was caused by a work-related injury, plaintiff would have been entitled to recover in this action, even under defendant's interpretation of paragraph 27, because the Plan benefits would have exceeded the workmen's compensation award. Plaintiff challenges the Committee's characterization of cause of death by asserting that the procedure employed in reaching the decision was improper and that the decision was factually erroneous. The defendant relies on section 3, paragraph 3, of the Plan, which provides that Committee determinations are conclusive as to questions arising in the administration of the Plan.

As the Court in *Hurd* noted, the cases hold that under such a provision, routine decisions about plan administration, including determinations of eligibility, are conclusive if made in good faith and if not arbitrary, capricious, or discriminatory. 136 F.Supp. at 154; *Bradford v. New York Times Co.,* 501 F.2d 51 (2nd Cir. 1974); *Menke v. Thompson,* 140 F.2d 786 (8th Cir. 1944). In this connection, the court again notes that Article VIII of the pertinent labor contract is even more restrictive than is the case law about the grounds for challenging a Committee decision. Article VIII provides that Committee decisions "*shall be controlling unless shown to have been discriminatory or in bad faith.*" (Emphasis added.)

■ The plaintiff has challenged the Committee's characterization of cause of death but has not adduced persuasive evidence that the procedure was so faulty that it rendered the determination arbitrary, capricious, discriminatory or in bad faith. Plaintiff has also failed to prove that the facts so clearly indicate that death was due to an on-the-job injury that any other characterization by the Committee must have been arbitrary, capricious, discriminatory, or in bad faith.

In support of her contention that the procedure was faulty, plaintiff showed that defendant's witness, Francis Brockman, secretary of the general Employees' Benefit Committee, could not remember the specific details of the han-

dling of plaintiff's claim, although he could explain the standard procedures. The fact that a committee member could not recall how a particular determination was made is not evidence showing discrimination, arbitrariness, capriciousness, or bad faith. Plaintiff also adduced evidence that the only member of the *area* Committee who was a medical doctor was absent from the meeting at which plaintiff's claim was considered. The uncontroverted evidence is, however, that the *general* Committee in St. Louis, not the *area* Committee in Oklahoma City, made the decision. Plaintiff also showed that while the witness Brockman testified that the Committee's decisions are based in part on information in the death certificate, the death certificate of Robert D. Paterson was not filed until after the date of the area Committee meeting which determined the cause of death. However, plaintiff did not show that at the meeting of the General Committee, which alone is authorized to make binding determinations under the Plan, the Committee was improperly constituted or that the death certificate was not available. Indeed, plaintiff did not show how the decision of the area Committee would have been changed by consideration of the death certificate, inasmuch as the death certificate lists cause of death as myocardial infarction, time of death as 11 a. m., and the interval between onset and death as "60 minutes," which would make the time of onset some time after Robert D. Paterson had returned home from the job. Such evidence does not satisfy plaintiff's burden of proving that the Committee's determination was discriminatory, arbitrary, capricious, or in bad faith.

In her effort to prove that the Committee's decision was arbitrary, capricious, discriminatory or in bad faith, plaintiff also attempted to show that death was in fact due to a work-related injury. The evidence presented on this point was: that the deceased reported to work about 8 a. m.; that he was given a "trouble assignment;" that the assignment required work which might have been accomplished by using a sixty-pound ladder; that he may have used the ladder in carrying out the assignment; and that on returning to the office at about 9:15 a. m. he appeared ill but complained of no accident. Such evidence does not prove that cause of death was a work-related injury and the court finds that it was not. Much less does such evidence satisfy plaintiff's burden of proving that the Committee's determination was so contrary to the facts that it must have been discriminatory, arbitrary, capricious, or in bad faith.

■ Plaintiff also relies on the fact that in granting the workmen's compensation award, the State Industrial Court determined that death was due to a work-related accident. But plaintiff cites the Court no authority that the Industrial Court's determination of cause of death is binding on this Court for the purpose of interpreting the provisions of defendant's Plan. Defendant points out that the Plan contains a provision specifically defining the properties of an on-the-job injury and defendant contends that, for purposes of determining obligations under the Plan, the Plan definitions and not those of the State Industrial Court are binding. Section 5, paragraph 5, describes such injuries:

"Accidental injuries shall be considered as arising out of and in the course of employment *only* where the injury has resulted *solely* from accident during and in direct connection with the performance of duties to which the employee is assigned in the service of the Company, or which he is *directed* to perform by proper authority, or in voluntarily protecting the Company's property or interests, and there must be *a clear and well-established history of the cause and circumstances of injury accidentally inflicted,* and they must be sufficient to produce the alleged injury, and there must be satisfactory evidence that such injury renders the employee unable to perform his duty in the service of the Company." (Emphasis added.)

88

This definition is not strained, novel, or unreasonable. The Court finds that plaintiff's decedent did not suffer an accidental injury or death within the meaning of the foregoing definition.

Accordingly, the Court finds that the determination by defendant's Employees' Benefit Committee that plaintiff was entitled only to those benefits due as a result of death caused by accident or sickness was not arbitrary, capricious, discriminatory or in bad faith. The Court further finds that paragraph 27 of defendant's Plan includes workmen's compensation payments as among those benefits payable under law, and so plaintiff is entitled only to the excess, if any, of the amount prescribed in the Plan above the amount of the workmen's compensation payment. Finally, the Court finds that there is no such excess in this case because the amount prescribed in the Plan was $10,387.80 and the workmen's compensation payment was $22,000, of which plaintiff received $14,000.

Judgment is therefore entered this 22 day of March, in favor of the defendant and against the plaintiff.