Edmonia Tenberg LEACH, Appellant,

v.

Herman BROWN et al., Appellees.

No. 13832.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 10, 1962.

Rehearing Denied Feb. 14, 1962.

Fred V. Klingeman, Karnes City, Lang, Byrd, Cross, Ladon & Oppenheimer, San Antonio, for appellant.

Vinson, Elkins, Weems & Searls, Thomas Fletcher, Roy L. Merrill, Houston, Morrill & Patton, Beeville, Dean J. Capp, Houston, Scarborough & Roberts, Kenedy, Butler, Binion, Rice & Cook, Houston, Cox, Smith & Smith, San Antonio, Neal Powers, Jr., Houston, for appellees.

MURRAY, Chief Justice.

This is the fourth time this cause has been before us. Our opinion on the first appeal is found in Tex.Civ.App., 251 S.W.2d 553, styled Leach v. Brown et al., opinion dated October 15, 1952, writ refused. In that suit Edmonia Tenberg Leach sought to recover the sum of $4,910.51, alleged to be due her as royalty under the provisions of an oil, gas and mineral lease executed by her on July 10, 1944, covering a one-half interest in 177 acres of land, a part of the James Johnson Survey in Karnes County, Texas. She further alleged that her interest in the 177 acres, known as "The Tenberg Lease," had been invalidly pooled or unitized with other leases in the Burnell Field, and that she was entitled to 7/16 of 1/8 of the royalty from her land, and that the other lease and royalty owners in the Burnell Field had no interest in the 7/16 of the 1/8 of the royalty. Mrs. Leach sued only for money alleged to be due her, but she could not recover unless her interest

in the 177 acres of land was freed from the unitization agreement.

The trial court held that the other lease and royalty owners in the Burnell Field were indispensable parties to the suit, and upon Mrs. Leach's refusal to amend, dismissed her suit, and on appeal this Court affirmed the judgment of the trial court. The Supreme Court refused to grant a writ of error, and thus this judgment of dismissal became final.

Thereafter, on August 7, 1953, Mrs. Leach filed a pleading under the same title and number as the original suit, and styled such pleading as "Plaintiff's First Amended Original Petition." The trial court sustained pleas of abatement to that petition and again dismissed the cause, and Mrs. Leach again appealed to this Court. In an opinion styled Leach v. Brown et al., Tex. Civ.App., 287 S.W.2d 304, a majority of this Court decided that this appeal was from an attempt to file an amended pleading in a disposed of cause and ordered the appeal dismissed. Justice Norvell filed a dissenting opinion expressing the belief that the petition was improperly described as an amended petition, and improperly given the number of the old cause, but was sufficient to constitute the filing of a new suit. The Supreme Court granted a writ of error and agreed with Justice Norvell's dissenting opinion, and in an opinion reported in 156 Tex. 66, 292 S.W.2d 329, styled Leach v. Brown, reversed our majority decision and remanded the cause to this Court for the purpose of passing upon other questions raised in the appeal.

This Court in Leach v. Brown, Tex.Civ. App., 298 S.W.2d 185, decided that this new suit, filed August 7, 1953, was such a suit as might be filed as a class suit, and reversed the judgment of dismissal and remanded the cause to the trial court.

This new suit is essentially the same suit as Mrs. Leach's original suit. She is still suing for the purpose of trying to free her one-half interest in the 177 acres known as the "Tenberg Lease", and from the Burnell Unitization Agreement executed on February 22, 1949, and recorded in both Bee and Karnes Counties on February 24, 1949. Thus this new suit was filed four years, five months and thirteen days after the Unitization Agreement was filed for record, but due to her coverture was not barred by the four-year statute of limitation. Article 5529, Vernon's Tex.Civ. Stats.

Thereafter the cause proceeded in the trial court as a class suit, the necessary parties of the various classes having been made parties. Both sides made motions for summary judgment. Appellant's motion was as to liability only, while appellees' motion was on the whole case. Appellant's motion was overruled, but appellees' was granted. The plaintiff below, Edmonia Tenberg Leach, has prosecuted this appeal.

The principal points raised by appellant in this appeal turn upon the interpretation or construction to be given paragraphs 4 and 12 contained in the oil and gas lease executed by Mrs. Tenberg, a feme sole, as lessor, to M. H. Marr and Herman Brown, in equal proportions as lessees, covering an undivided one-half interest in a tract of land located in Karnes County, containing 177 acres, more or less, and now known as the "Tenberg Lease". This lease was signed and acknowledged by Mrs. Tenberg on June 10, 1944, and recorded in the Deed Records of Karnes County, Texas, on June 12, 1944.

Paragraph 4, which is a part of a printed form used by the parties, reads as follows:

"4. Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said premises in compliance with the spacing rules of the Railroad Commission of Texas or other lawful authority, or when to do so would, in the

judgment of Lessee, promote the conservation of the oil and gas in and under and that may be produced from said premises, such pooling to be into a unit or units not exceeding 40 acres each. Lessee shall execute in writing an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of the royalties elsewhere herein specified, Lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein on an acreage basis bears to the total acreage so pooled in the particular unit involved."

Paragraph 12, which was a typed-in paragraph, reads as follows:

"12. Lessee shall have the continuing and recurring right as to all or any part of the land covered hereby to pool and/or combine and/or unitize the leasehold estate and the royalty estate created hereby as to the gas and condensate and all other hydrocarbons contained in said gas with similar estates in other lands so as to form, by such combinations, a unit or units embracing all or part of the land overlying the producing reservoir or reservoirs for the production of gas and condensate and all other hydrocarbons contained in the gas by ordinary production methods or through a cycling plant or plants; and in the event such unit is formed, lessors shall receive as royalty from the unit production of gas and condensate and all other hydrocarbons contained in the gas and extracted therefrom, the proportionate part of the royalties herein provided for. The drilling of and production from a unit well or wells or operations upon a unit which includes all of the land covered hereby shall maintain this lease in force as to all of the land covered hereby in the same manner and to the same extent as though such operations were upon or such production were from the identical land covered hereby even though such operations are on or such production is from other land within such unit. In the event any portion of the leased premises is included in a unit furnishing gas to a cycling plant or plants, lessee or the owner of such plant (through permission of lessee) may drill and operate an input well or wells on such unitized portion of the lease and any such input well shall have the same effect as to maintaining this lease in force as though it had been completed as a producing well, so long as said leased premises or said portion thereof is included in said unit.

"Lessee shall have the further right after the formation of one or more units under the provisions hereof, to rearrange, diminish, expand or combine the unit or units thus formed with another unit or units so as to rearrange and/or consolidate leasehold and royalty interests in the pool or reservoir to an extent sufficient to cover and conform to all or a part of the known productive area. In such event, lessors' royalty participation shall be adjusted to conform with the revised unit.

"If any portion of the unitized part of the lease is found to be non-productive, such non-productive portion may be excluded from unit participation by the action of the unit leasehold owners, and this shall be evidenced by an instrument of writing describing the land excluded and shall be filed of record in the office of the County Clerk, and in such event, Lessors' participation in the unit royalty production shall be reduced accordingly, provided that

lessors shall not be required to account for any royalties theretofore paid.

"Any unit or units formed or any changes thereof as herein provided for, shall become effective at 7:00 o'clock A.M. on the first day of the month following the date of filing notice by Lessee in the records of the county in which the above described land is located, designating the units or unit formed, or any changes thereof.

"The right of unitization shall not apply to oil or oil rights at any depth, nor to casinghead gas produced with oil; and for the purposes hereof, the term 'oil' as used herein shall be considered to be any mixture of hydrocarbons, regardless of gravity, naturally occurring substantially as liquids in the reservoir from which obtained and capable of being produced at the well head in liquid form by ordinary production methods, and which are not the result of condensation of gas after it leaves the reservoir."

Appellant's first point is that the trial court erred in holding that appellees were authorized to unitize appellant's royalty interest without regard to the provision in paragraph 4, reading in part as follows: "In lieu of the royalties elsewhere herein specified, Lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein on an acreage basis bears to the total acreage so pooled in the particular unit involved." If this provision is given effect, then appellees had no authority to pool or unitize appellant's property with other property except upon a surface acreage basis.

On February 22, 1949, appellees entered into two unitization agreements with reference to appellant's property. The 177 acres were divided into two tracts, one numbered 13, and the other 14. One of these agreements related to Tract 13, and the other to Tract 14. These two unitization agreements were both based, not on an acreage basis, but upon a productive sand basis. If such agreements were authorized, such authority must be found in paragraph 12, because it is prohibited by paragraph 4.

Appellees contend that in this respect there is a conflict between paragraphs 4 and 12, and that 12 should be given controlling effect. We fail to find any conflict between these two paragraphs in this respect. The only provision in Paragraph 12 as to the payment of royalties is as follows: " * * * and in the event such unit is formed, lessors shall receive as royalty from the unit production of gas and condensate and all other hydrocarbons contained in the gas and extracted therefrom, the proportionate part of the royalties herein provided for." This provision does not conflict with paragraph 4, but rather refers to it to determine what royalties are provided. There being no conflict between these two paragraphs, each should be given a meaning, if possible, and construed together, and when that is done it is plain that appellees had no authority to enter into any unitization agreement, except upon an acreage basis. Appellees acted without authority in entering into the unitization agreements and they are not bindng on appellant.

We have been cited by appellees to Tiller v. Fields, Tex.Civ.App., 301 S.W.2d 185; Leopard v. Stanolind Oil & Gas Co., Tex. Civ.App., 220 S.W.2d 259, and Phillips Petroleum Co. v. Peterson, 10 Cir., 218 F.2d 926. We have read these cases and find them not in point here.

The summary judgment granted by the trial court was based upon the validity of the unitization agreement and thus the trial court was in error.

Our opinion rendered on November 22, 1961, is set aside and withdrawn, as is our judgment based thereon. The judgment of the trial court is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

BARROW, J., not participating.