LOCALS 2222, 2320–2327, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiffs,

v.

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, Defendant.

Civ. A. No. 79–1399–G.

United States District Court,
D. Massachusetts.

May 28, 1980.

**260**

Warren H. Pyle, Angoff, Goldman, Manning, Pyle & Wanger, P.C., Boston, Mass., for plaintiffs.

Joseph D'Ariggo, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

GARRITY, District Judge.

Plaintiffs are the recognized collective bargaining representatives for employees of the defendant, New England Telephone and Telegraph Company. This dispute concerns the discharge of one of the employees, Joseph Carfagna, and the union's attempt to have that discharge arbitrated. Because of provisions in the collective bargaining agreement relating to an employee's years of service, to be discussed below, the arbitrator determined he was without authority to hear the merits of Carfagna's claim. Thereafter, plaintiffs filed the instant action seeking a determination from the court that Carfagna's claim was one that could properly be arbitrated. The defendant employer moved to dismiss and we heard oral argument. For the reasons stated herein, defendant's motion is granted.

The contract provisions at issue are contained in two documents. The first is the Plan for Employees' Pensions, Disability Benefits and Death Benefits (the Plan) which, as the title suggests, governs matters relating to employee wages, benefits and pensions. The principal responsibility for administering the Plan (i. e., for deciding questions as to length of service, pension formulas, calculation of annuity, eligibility, etc.) lies with an Employees Benefit Committee. Plan § 3. The Plan, in turn, is incorporated into the collective bargaining agreement (Agreement) between New England Telephone and the union locals named here as plaintiffs. Agreement Art. 12.01.

The question presented by this case is one largely of interpreting a collective bargaining agreement. In the usual case of a dismissal, the union may file for arbitration under the provisions of Article 9.03(a) of the Agreement. However, the Agreement excludes from arbitration any question that relates to the dismissal of a certain class of employee—employees having "less than one year of net credited service." Article 9.04.[1] Net credited service is computed by referring to a number of complex provisions in the Plan; the most important among them for purposes of this suit is section 8(6) which describes how a temporary layoff affects the calculation of an employee's term of service.

When the union sought to bring Carfagna's discharge to arbitration, the defendant company challenged the arbitrability of the grievance. Both parties contested the preliminary question of what Carfagna's net credited term of service amounted to. The company sought to show that Carfagna had less than one year net credited service, which would mean the whole question of his

---

1. Article 9.04 provides:

 Any question in connection with the discipline, demotion or dismissal of any employee having less than one year of net credited service at the time of such discipline, demotion or dismissal is specifically excluded from the arbitration procedures outlines in this Article.

dismissal would be excluded from arbitration because of Article 9.04. The company prevailed by presenting a determination of the Benefit Committee made prior to Carfagna's discharge which established May 15, 1978 as the date for continuous service. Since he had been discharged on July 26, 1978, it was clear, on the basis of the Committee's decision, that Carfagna was discharged with less than one year of net service.

Ordinarily it is up to the arbitrator to decide whether or not a matter presented for arbitration is arbitrable. In this case, the decision on arbitrability depended on whatever was deemed to be Carfagna's net credited term of service. However, because of one further provision in the Agreement, the arbitrator was not even free to make an independent determination of what the term of service might be. Article 12.03 of the Agreement states: "Any question arising in connection with [the Plan] . . . is specifically excluded from the arbitration procedures outlined in Article 9 of the Agreement."[2] As a result the arbitrator accepted the determination of the Benefit Committee as correct and accordingly was barred by Article 9.04 from hearing further any matters in connection with the discharge. The union now asks this court to find that the Benefit Committee was wrong, that Carfagna had at least one year of net credited service under the Plan, and that the arbitrator may therefore proceed to the merits of Carfagna's claim.[3]

New England Telephone has moved to dismiss this action on the ground that all decisions of the Benefit Committee are conclusive, and that therefore no review will lie in this court unless the complaint alleges that the Committee's decision was arbitrary, capricious, or in bad faith. The de-

fendant cites two provisions of the Plan in support of this position. At Section 3(4) the Plan provides that the Benefit Committee "shall determine conclusively for all parties all questions arising in the administration of the Plan." In addition, Section 8(3)(a) states that "in all questions relating to . . . term of employment . . . the decision of the Committee . . . shall be final."

Plaintiffs argue, on the other hand, that although the Plan purports to give conclusive and final effect to Committee decisions, finality is meant to apply only to determinations made with a particular factual dispute in mind. In this instance, they argue, the Benefit Committee's decision of Carfagna's net service was in a way only advisory. It was made in an unrelated context, in the course of the ongoing administration of the Plan, long before there arose any dispute as to the discharge or as to the accuracy of the calculation. Hence it is neither conclusive on the question of service nor insulated from court review.

■ We disagree. In our view, decisions of the Benefit Committee on an employee's net credited service are final and conclusive, even though the Committee might not know how the resulting calculation will ultimately be used. Counsel for the defendant represented at the hearing that thousands of routine determinations are made by the Committee regarding employees' accumulated service. Once made, the calculation of net credited service is applied in determining, among other things, sick pay, pension eligibility, vacation time, seniority and promotions. Given the ubiquitous application of the net service calculation throughout so many provisions of the Plan, and the great number of such decisions the Commit-

---

**2.** The parties agree that no issue is presented as to whether the decision of the Benefit Committee regarding Carfagna's net service is a decision "in connection with" the Plan, within the meaning of Article 12.03.

**3.** At the time of the arbitrator's decision, plaintiffs had two other avenues of grievance or review. The discharge could have been presented as a grievance under the provisions of Article 8 of the Agreement. Plaintiffs reject-

ed that course because, in light of the Benefit Committee's determination, the grievance could never have been pushed to arbitration. The second avenue would have been to present the Benefit Committee's decision to the Employees' Benefit Claim Review Committee established under Section 3(3) of the Plan. For some unspecified reason this was not done and the time allowed for review has passed.

tee is called upon to make, it would seem perfectly reasonable for the parties to agree that for the sake of economy in administering the Plan, the parties shall be bound by the Committee's decision. *Cf., Clark v. New England Telephone and Telegraph Co.*, 1919, 229 Mass. 1, 6, 118 N.E. 348.

Both the Plan and the Agreement are the product of extensive negotiations between union and company representatives; where their provisions state that Committee decisions are conclusive and final we should give these words their intended effect. To hold otherwise would unduly burden the effective administration of the Plan. Since the Plan provides for review committee to sit as an additional check on the Benefit Committee's discretion, we believe the Plan strikes the proper balance between the interests of the employees and the need for flexibility in administering the Plan.

 To hold that the Committee's decision is conclusive, however, does not preclude court review in all cases. A court may set aside decisions of the Committee that it finds are arbitrary, capricious, fraudulent or made in bad faith. See *Riley v. MEBA Pension Trust*, 2 Cir. 1977, 570 F.2d 406, 410; *Wyper v. Providence Washington Insurance Co.*, 2 Cir. 1976, 533 F.2d 57, 62; *Paterson v. Southwestern Bell Co.*, E.D.Okl. 1976, 411 F.Supp. 79, 87; and *Clark, supra*, 229 Mass. at 9, 118 N.E. 348, in which this relatively narrow standard of review was applied.

Plaintiffs' reliance on *Hurd v. Illinois Bell Telephone Co.*, N.D.Ill.1955, 136 F.Supp. 125, aff'd 7 Cir. 1956, 234 F.2d 942, cert. den. 1956, 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124, as permitting any lesser standard of review is, in our view, misplaced. In that case the court was called upon to review a pension committee's interpretation of its legal obligations under the Social Security Act. Presented with this broad question of policy affecting the rights of all employees under the plan, the court refused to confine its review to the question of whether the Committee had acted in bad faith or dishonestly. But as to disputes arising out of routine determinations applying the Plan's provisions to an individual set of facts, the court conceded that the committee decision would be conclusive unless made in bad faith. Citing a number of cases that adopted this narrow standard of review, the court in *Hurd* noted their distinguishing characteristics:

> [These] cases all raised some question of eligibility under the plan—whether the employee had satisfied the requirement of continuous service, whether a beneficiary qualified as a dependent, etc. Such decisions involve a determination of the facts and an application of the provisions of the plan to the facts. From a judicial point of view these are questions of law and fact—on which the decision of the committee or board, under the decided cases, is conclusive if made in good faith.

136 F.Supp. at 154.

From our reading of the facts here presented, we fail to see how the case at bar differs from the cases described in the above-quoted passage. The Committee's decision on Carfagna's net service was reached by applying the provisions of Section 8(6) of the Plan to Carfagna's individual employment history. The decision is conclusive, even if erroneous, unless arbitrary, capricious, or in bad faith. No allegation of bad faith appears, either explicitly or implicitly, on the face of the complaint—and in fact plaintiffs' counsel stated at oral argument that, in view of their reliance on *Hurd*, no such allegation was intended.

Accordingly, plaintiffs have failed to state a claim upon which relief can be granted. Defendant's motion to dismiss is granted.